### PITTSBURGH WATER HEATER CO. v. BELER WATER HEATER CO.

(District Court, W. D. Pennsylvania. April 15, 1915.)

No. 22.

1. COURTS ☞347—PLEADING—NEW EQUITY RULES.

The purpose of new equity rules 25 and 30 (198 Fed. xxv, 115 C. C. A. xxv) is to secure brevity and simplicity of allegation in bills and answers, and to that end the profession should lend its aid, by conforming as near as may safely be done to such rules.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. ☞347.]

2. PATENTS ☞328—VALIDITY AND INFRINGEMENT—WATER HEATER.

The Shook patent, No. 993,723, for an instantaneous gas water heater, the essential feature of which is the use of a single gas valve in combination with thermostatic controlling means, *held* void, on the ground that the patentee was not the original and first inventor of such feature, which is disclosed in the Walker patent, No. 886,100.

In Equity. Suit by the Pittsburgh Water Heater Company against the Beler Water Heater Company. On final hearing. Decree for defendant.

Synnestvedt & Bradley, of Pittsburgh, Pa., and S. T. Cameron, of Washington, D. C., for plaintiff.

John H. Roney, of Pittsburgh, Pa., for defendant.

ORR, District Judge. This patent case is now before the court for decision after trial. The nature of the case will be disclosed in the following observations which the court is constrained to make in respect to the bill and answer in the light of the equity rules of the Supreme Court. What may be observed with respect to the pleadings in this case may be applied to many cases which have been brought since the adoption of the new equity rules, for it has become apparent that solicitors in equity, and especially solicitors in patent causes, have hesitated to conform to the provisions of those rules.

[1] Rule 25 (198 Fed. xxv, 115 C. C. A. xxv), which relates to. the contents of a bill of complaint, is one which should be recognized by the profession as adapted, not only for the relief of the courts, but for the relief of counsel. Eight lines of. the typewritten bill in this case have been deemed necessary to set forth the corporate names

of each party, their citizenship and residence, and that the acts therein complained of were done in this district. Instead of giving "a short and plain statement of the grounds upon which the court's jurisdiction depends," and "a short and simple statement of the ultimate facts upon which the plaintiff asks relief," 28 lines were deemed necessary to aver that George A. Shook, being the original and first inventor of new and useful improvements in instantaneous water heaters, and being, by reason of his conformity and that of said invention with every provision of law relating thereto, entitled to letters patent of the United States, made proper application therefor, with the result that letters patent of the United States, No. 993,723, were issued in due form for the said invention upon May 30, 1911, not, however, to said Shook, but to the plaintiff, in whom title to the said invention had become vested by proper assignments in the meantime, as thereinafter set forth.

Twenty-four lines of the typewritten bill were deemed necessary to aver that by virtue of a written assignment from said Shook to Reynolds C. Frampton, dated December 5, 1908, and recorded in the United States Patent Office on January 4, 1909, in Liber R 80, page 234, Transfer of Patents, and by virtue of a similar assignment from said Reynolds C. Frampton to the plaintiff, dated November 12, 1909, and recorded in the same office and in like manner, November 30, 1909, in Liber T 82, page 409, plaintiff became the exclusive owner of said patent and of all rights and privileges thereby granted, which have been of great commercial value to the plaintiff.

Thirty-four lines were deemed necessary to aver the expenditure of money by plaintiff in carrying on the business of manufacturing water heaters embodying the apparatus of the patent, the acquiescence in and recognition of plaintiff's rights by the public, from which large profits would be made, except for the infringements by the defendant company, which, although well knowing the premises, has since the date of the patent, in violation of plaintiff's rights, at Pittsburgh, in this district, and elsewhere, made and sold water heaters embodying the apparatus of the patent, and particularly the construction recited in claims 4, 5, 14, 20, 21, and 22, and has continued so to do, to plaintiff's great loss and injury.

Eight lines were deemed necessary to aver that defendant has on hand such water heaters, to pray discovery of the extent thereof, and to aver that defendant's acts complained of encouraged others to unlawfully disregard the plaintiff's rights.

Over nine lines were deemed necessary to aver notice to defendant of plaintiff's rights, refusal by defendant to regard such notice, and plaintiff's conformity with the statute in properly marking its products.

That the foregoing may not appear hypercritical, reference is made to McCoy v. Nelson, 121 U. S. 484, 7 Sup. Ct. 1000, 30 L. Ed. 1017, where a bill in equity was held to be in proper form and the requisites of such bill were considered.

It is unnecessary in this case to determine whether or not, since the new equity rules, a plaintiff may safely omit the averments of compliance with all conditions precedent to the grant of a patent, but

it is well to have in mind as a suggestion from the case last cited that, if the bill avers that the patentee or plaintiff "is the original and first inventor of a new and useful improvement and invention, * * * which are fully and particularly described in the letters patent hereinafter mentioned, and which had not been known or used before his said invention," a great deal of verbiage common in the bills in patent causes can be eliminated.

The general averment that an invention had not been known or used before is certainly not helped by limiting such averment to this country, and then averring that it had not been patented or described in this or any foreign country, that it had not been for more than two years prior to the date of his application described or in public use or on sale in this country, and that it had not been abandoned to the public. The detailed averments thus briefly expressed are altogether not any more forceful than the brief averment hereinabove quoted from the case last cited.

The prayers of the bill in this case are such as were common prior to the adoption of the equity rules. They include prayers that the defendant be decreed to pay the costs, and that the court grant a writ of subpœna, and that the defendant be bound to answer, waiving, however, answer under oath.

The equity rules have sufficient provisions as to costs to justify omission of a prayer for the imposition of costs. With respect to the prayer for a subpœna, rule 12 (198 Fed. xxii, 115 C. C. A. xxii) provides that the clerk shall issue the same whenever a bill is filed upon application by the plaintiff. No prayer for process is necessary, because it is not issued by an order of the court, but by the clerk, under the rule. The prayer that the defendant be required to answer is not necessary, except under rule 40 (198 Fed. xxix, 115 C. C. A. xxix) relating to nominal parties, "unless the plaintiff specially require him to do so by prayer," for every defendant, other than a nominal party, is required to answer or take some other step, if he would not have a decree against him. The waiver of an answer under oath seems wholly unnecessary, because the equity rules apparently do not require any answer to be made under oath. It cannot be inferred that an answer should be made under oath, when the bill is not required to be verified by the oath of the plaintiff, except where some special relief pending the suit be required. The answer no longer appears to be the expression of the results of searching the conscience of the defendant. The method pointed out in rule 58 (198 Fed. xxxiv, 115 C. C. A. xxxiv) for procuring discovery by means of interrogatories is now the method of searching the conscience of the opposite party. That rule provides that the answers to the interrogatories shall be in writing under oath and signed by the party. It seems, therefore, a proper inference from the provisions of the equity rules with respect to oaths to portions of the record other than the answer, and the omission of the requirement of an oath to an answer, that an answer in equity need not now be made under oath.

The foregoing observations are more by way of suggestion to the profession than as laying down rules which should govern in the

preparation of a bill. The court is not unmindful of the fact that rule 25 is not an absolute direction of all that a bill should contain, but that it is a statement of what shall be sufficient to sustain a bill. If the matters therein prescribed are contained in the bill, the bill is a good bill, although other matters may be embraced therein. The aim of the rule is brevity and simplicity of allegations in bills, and the profession should lend their aid to such end.

It is natural, when bills in equity are drafted without regard to the equity rules, that answers should be drawn with equal inattention to the provisions of such rules. Without going into the answer in this case at length, it is sufficient to say that it is not in accord with rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi), in that it does not set forth "in short and simple terms," the matters of defense. As an illustration it is only necessary to refer to the fact that eight lines of the printed answer are used to reserve to defendant some supposed benefit by reason of the manifest imperfections of the plaintiff's bill. The real defenses to the bill are that Shook was not the first and original inventor and that there was no infringement.

[2] Giving attention now to the merits, we find that the title to the patent in suit is in the plaintiff, and that this court has jurisdiction, because the acts of the defendant which are alleged to infringe the rights of the plaintiff were committed within this district. The only defense which it is necessary to consider is the defense that Shook was not the first and original inventor.

Shook, in the specifications of his patent, sets forth:

"The invention relates to instantaneous water heaters having a dual control of the gas supply, and particularly to the mechanism for automatically governing the gas supply. The invention has for its principal objects: The provision of a simplified apparatus of the character specified, wherein a single valve for controlling the gas supply replaces the plurality of independent valves heretofore considered necessary for this purpose; the provision of a device of the character specified having a single gas valve, wherein the valve may be operated by the thermostatic controlling means independent of the water valve, and may be closed thereby in case the water valve is accidentally stuck open; and the provision of an improved controlling device for the gas valve, wherein the closure of the gas valve in case of accident to the water valve, is more positive than that of the thermostatically controlled gas valves heretofore employed."

The claims of the patent in controversy are as follows:

"4. The combination in a water heater having an inlet and outlet, heating means, and a conduit for supplying gas to the heating means, of a water valve actuated by variations of pressure of the water, a thermostatic controlling means governed by the water of the heater, a valve in the conduit, and means whereby the conduit valve is controlled both from the water valve and from the thermostat.

"5. The combination in a water heater having an inlet and outlet, heating means, and a conduit for supplying gas to the heating means, of a water valve actuated by variations of pressure of the water, a thermostatic controlling means governed by the water of the heater, a valve in the conduit, means whereby the conduit valve is operated from the water valve, means whereby the conduit valve is operated from the thermostatic controlling means, and means whereby the thermostatic controlling means may close the conduit valve without moving the water valve."

"11. In a water heater, the combination of a conduit for water under pressure, a burner for heating the water in said conduit, a valve controlling the

flow of fuel to said burner, means normally holding said valve closed, and devices operated by the flow of water through said conduit and by variations of temperature in said water for controlling said means."

"20. In a water heater, the combination of a conduit for water under pressure, a burner for heating the water in said conduit, a normally seated valve controlling the flow of fuel to said burner, a compound power mechanism adapted to hold said valve closed, a device operated by the flow of water through said conduit for controlling one part of said power mechanism, and a device operated by variations of temperature in said water for controlling the other part of said mechanism.

"21. In a water heater, the combination of a conduit for water under pressure, a burner for heating the water in said conduit, a normally seated valve controlling the flow of fuel to said burner, power mechanism in the form of a plurality of springs adapted to hold said valve closed, a device operated by the flow of water through said conduit for controlling one of said springs, and a device operated by variations in temperature in said water for controlling the other of said springs.

"22. In a water heater, the combination of a conduit for water under pressure, a burner for heating the water in said conduit, a normally seated valve for controlling the supply of fuel to said burner, mechanism for operating said valve, a device actuated by the flow of water through said conduit and a device actuated by variations of temperature in said water, said devices governing the operation of said valve through said mechanism, causing said valve to open when a flow of water is established through said conduit and the water is below a predetermined temperature, but causing it to remain seated or when open to move in a closing direction when the water is above a predetermined temperature."

Instantaneous water heaters were old, and the arrangements for regulating the flow of water and the flow of gas were varied and sometimes quite complex. The use of thermostatic controlling means was old. The essential feature of the Shook patent was the use of the single gas valve, in combination with other well-known elements, and its operation by thermostatic controlling means independent of the water valve.

United States patent No. 886,100, to Walker, under date of April 28, 1908, three years earlier than the date of the patent to Shook, discloses the Shook invention, especially in Fig. 2, attached to and made part of said letters patent. Walker's patent contains a water valve, a single gas valve, and thermostatic means for controlling the gas valve; the gas valve being controlled both from the water valve and thermostatic means. Walker's patent, not only discloses the Shook invention, but it illustrated and described a water heater which has been effectively operated.

In order to meet the earlier date of the Walker patent, the plaintiff endeavored to show, and offered evidence tending to show, that Shook's date of invention was prior to that of Walker's. In undertaking so to do, the burden of proof was necessarily cast upon the plaintiff, and must have been assumed by it. See Clark Tread Co. v. Willimantic Linen Co., 140 U. S. 481, 11 Sup. Ct. 846, 35 L. Ed. 521. The court is constrained to hold that the plaintiff has not sustained the burden. The evidence offered by it tended to show that Shook conceived the device of his patent in the spring of 1907, upon an uncertain date which cannot be placed earlier than the latter part of March. There was no reduction to practice by Shook until some time during the year 1908.

The evidence introduced on the part of the defendant has led the

court to the conclusion that Walker conceived the device of his patent as early as September, 1906, and soon afterwards caused the valves to be removed from a heater of a different type, and had new valves made therefor in accordance with the disclosure of his patent, and found that the same would operate. In March of 1907 he took up with his patent attorneys the matter of procuring a patent for his invention. Walker, at the time he made the invention, was an engineer in the government service, engaged in the improvement of the Ohio river. His disclosure was to two men engaged in the plumbing business, who did work for him in the matter of the making of the new valves. He further disclosed his invention on March 11, 1907, to two of his associates in the United States Engineers' Office at Wheeling, W. Va., who affixed their signatures to his drawing.

So far as it appears, Walker and the persons to whom he disclosed his invention, and who were called as witnesses on behalf of the defendant, have no interest in the defendant company, unless it be inferred that Walker is interested in the result of the litigation because of his priority of invention. On the other hand, the witnesses for the plaintiff in support of Shook's claim for priority seem to be interested in the plaintiff company. Having seen the witnesses and heard them testify, the court is satisfied that Walker was the prior inventor, without giving any consideration to the fact that the burden of proof rested upon the plaintiff.

The plaintiff's counsel criticize severely the construction and use by the defendant of certain heaters involving the Walker construction at the defendant's factory, and urge that they are to be deemed of light value, as being in the nature of tests made by one party in the absence of the other. Their contention, however, is not entitled to great consideration, because the evidence shows that one of the heaters involved, made by the defendant and involving the Walker construction, was operating in the house of a man named Beatty for some months, that the same was operating at the time of the trial, and that no application was made on the part of the plaintiff for an opportunity to examine that heater. It further appears that Beatty was not connected with the defendant in any way.

The court finds as a fact, under all the evidence, that Shook was not the first and original inventor of the essential feature of his patents. In view of this fact, it is unnecessary to compare the structure of the defendant with the structure of the plaintiff. The defendant is using a combination found in the claims of United States patent No. 1,053,-370, granted to J. Ellis, on February 18, 1913. There is an arrangement of the essential parts in the Ellis water heater different from the arrangement of essential parts in the plaintiff's heaters. The single gas valve is found in the defendant's heaters, but, as we have seen, they are entitled to use it as against the assignees of the Shook patent by reason of the prior invention of Walker.

The bill must be dismissed, at the costs of the plaintiff. Let a decree be presented.