No. 10,385.

BIESER, ET AL. *v.* STODDARD, ET AL.

Decided July 2, 1923.

Action to restrain the diversion of water for irrigation. Decree for plaintiffs.

*Affirmed.*

1. JUDGMENT—*Water Decree—Collateral Attack.* A water adjudication decree which has become absolute by the limitations of the statute under which it is pronounced, is not subject to collateral attack.

2. WATER RIGHTS—*Prescription.* A right to the use of water may

not be established by prescription and adverse use in derogation of statutory provisions, and of the decree rendered thereunder, by one who has full opportunity to assert his right thereunder.

3.    *Water Decree—Res Judicata.*  In the circumstances of the case under consideration, a water decree is held res judicata as to attacks made by defendant.

4.    *Pleading—Defenses.*  Defenses in an action to restrain the diversion of water, considered and held insufficient.

5.    PLEADING—*Amendment—Water Decree.*  An amendment to a pleading making it in effect an attack upon a water adjudication decree, held properly denied.

6.    WATER RIGHTS—*Pleading—Developed Water.*  A plea in an answer setting up that water, diversion of which is sought to be enjoined, was newly developed, considered and held radically and fatally bad.

7.    JUDGMENT—*On Pleadings.*  A motion for judgment on the pleadings is not looked upon with favor.  It admits as true the allegations in the pleadings of the opposite party and all reasonable inferences and deductions therefrom, but it does not admit allegations that are not well pleaded.

8.    EVIDENCE—*Judicial Notice.*  Well recognized natural and physical laws are judicially known and may not be put in issue by denials of their inevitable effect.

*Error to the District Court of Mesa County, Hon. Thomas J. Black, Judge.*

Mr. S. N. WHEELER, Messrs. MCMULLIN & STERNBERG, for plaintiffs in error.

Messrs. BURGESS & BOTHWELL, Messrs. VINCENT & VINCENT, for defendants in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

1.    THE parties will be designated as below.  The plaintiffs Stoddard and others brought this action in September, 1919, against the defendants Bieser and others for an injunction to restrain them from diverting or using through

their Willow creek ditch the waters of Willow creek in water district No. 42, Mesa county, Colorado. The plaintiffs' motion for judgment on the pleadings was sustained and the injunction decree passed.

The material facts alleged in the complaint, and which, as we shall see, are not put in issue by any of the defenses in the answer, are here summarized. Willow creek is a tributary of Mesa creek. In the original adjudication proceeding for the settlement of priority rights of water for irrigation in water district No. 42 the conditional decree, rendered February, 1890, awarded to the West Side ditch No. 3, owned by the plaintiffs, taken out of Mesa creek, a priority as of September 23, 1887. By a decree in 1916, in a supplemental proceeding, the conditional decree was made absolute both in respect to the date of priority and the volume of water. By the same decree of 1890 there was a conditional award of a priority to the Willow creek ditch of the defendants numbered 1, taken out of Willow creek, and the date was fixed as August 15, 1888. By the same later supplemental decree of 1916 this conditional decree was made absolute for the same volume and of the same date fixed by the earlier conditional decree. The sources of supply of water of Willow creek are various springs around the rim of Grand Mesa, about six miles above the headgate of the ditch of the defendants. These springs are not on lands owned by the defendants. The headgate of the defendants' ditch is some distance above the point where Willow creek empties into Mesa creek. The headgate of the plaintiffs' ditch is below the junction of these streams. The plaintiffs, at a time of scarcity of water in the year 1919, demanded of the water commissioner that he close the headgate of the defendants' ditch so that the waters of Willow creek would pass unobstructed into Mesa creek and therefrom into the headgate of the plaintiffs' ditch for the irrigation of their lands for which water was then essential. The defendants, disregarding the action of the water commissioner taken at the request of the plaintiffs, opened their headgate and diverted the

waters of Willow creek into their ditch and threatened a continuance of the same and gave notice that they would not permit the water commissioner to close it. It was to determine the rights of the respective parties, by asking for the injunction restraining defendants from continuing their alleged unlawful acts, that this action was brought.

The undisputed facts, therefore, are, in substance, as the complaint alleges, that plaintiffs' priority is senior to that of the defendants, and that there was not enough water flowing in Mesa creek to satisfy plaintiffs' senior appropriation, if the defendants' priority was diverted from the tributary Willow creek.

The answer has five separate defenses. The first defense consists of admissions and supposed denials of some of the allegations of the complaint. Some of these denials are negatives pregnant; others are not well pleaded, or are at variance with the adjudicating decree on which the plaintiffs, as well as the defendants, rely and which has been invoked by both parties, or are contrary to physical facts and natural laws of which courts have judicial knowledge. We are of opinion that unless the later and affirmative defenses, or some one or more of them, are sufficient to defeat the action, the writ was properly allowed, since the first defense, as pleaded, admits the case as made in the complaint.

2. In the second defense are blended or commingled two separate defenses: One, that the defendants have contributed to Willow creek about 25 inches of water, no part of which was included in the natural flow; the other, a prescriptive right to the available flow of the waters of Willow creek.

The third defense is that plaintiffs are estopped to assert their decreed senior rights as against the defendants, on the ground that for more than thirty years the defendants have continuously used the waters of Willow creek and have never abandoned or forfeited their rights thereto, and have expended large sums of money in improving the creek and in assembling the waters of the springs and thus

increasing the flow, with the honest belief on their part that they were the sole owners thereof and with plaintiffs' full knowledge and acquiescence in the defendants' claim.

The fourth defense is a plea of our seven years statute of limitations, based upon possession for more than thirty years under color of title in good faith, and the payment of all taxes assessed against the lands and water rights during that period.

These defenses, and abandonment, separately pleaded, may be considered and disposed of together, at least in part. The pleadings conclusively show, and the defendants admit, that the plaintiffs and the defendants were parties to the proceedings in which the conditional and absolute decrees were rendered. If it be true, as alleged in these various defenses, that the defendants, by using the waters for a period of more than thirty years, had acquired a superior right of priority, either by prescription or as the result of an equitable estoppel, or under the statute of limitations, or by appropriation and adverse use after abandonment thereof by the plaintiffs, or if they had acquired the right to the increase of the natural flow of the stream, they certainly were aware of their rights when the adjudication decree was made absolute in June, 1916, and knew of defendants' alleged increased flow when the conditional decree was rendered. They had an opportunity to assert these rights when they appeared in the supplemental proceeding and secured, by one clause of the final decree, an award of priority for their own ditch. Not only did they acquiesce in the absolute decree which awarded the senior right to the plaintiffs, but they did not seek or ask for a review thereof within the prescribed period. When this action was begun the plaintiffs' rights, therefore, under this decree were paramount to the defendants'.

These attempted defenses are merely collateral attacks upon a decree long since made absolute by the limitations of the very statute under which it was pronounced. As to the prescriptive right, we further say that this Court in *German Ditch & Reservoir Co. v. Platte Valley Irr. Co.*, 67

Colo. 390, 178 Pac. 896, said that in exceptional circumstances a prescriptive right to the use of water may be established. We said, however, that such a right may not be established "by prescription and adverse use in derogation of those statutory provisions, by one who has full opportunity to assert his right thereunder." This absolute decree awarding to the plaintiffs a senior right might have been defeated, at least the defendants had the opportunity at that time to show either that the plaintiffs' rights had been lost to the defendants by prescription and adverse use, by estoppel, or by the seven years statute of limitations, or by abandonment. If they did not interpose such defenses, they might have done so, but whether such issues were, or were not, litigated, they might have been, and the decree in plaintiffs' favor is *res adjudicata* in this action as against such attacks as are made by the defendants, and plaintiffs' rights are paramount. The *German Ditch Company* case is decisive upon this point. The decisions in the same case in 56 Colo. 252, 139 Pac. 2, and *Comstock v. Ramsay*, 55 Colo. 244, 133 Pac. 1107, are to the same effect.

As to the plea of our seven years statute of limitations, we say that this plea is also bad because the payment of taxes by the defendants was upon their own lands and their own decreed ditch rights as an entirety. There is no sufficient plea, or plea at all, that defendants had paid the taxes upon the plaintiffs' decreed senior rights, or upon plaintiffs' lands in connection with which their ditch and water rights are taxed. As to the plea of abandonment it should also be said that the defense is not even in good form. It is nothing more than an unwarranted conclusion of law which the pleader makes from admitted allegations in the complaint and answer. 'Another defect is that a denial in one sentence that the plaintiffs or their grantors ever had or acquired any right by appropriation, decree, or otherwise, to the waters of Willow creek, superior to the rights of the defendants, is directly coupled with an allegation that such rights as plaintiffs acquired to these waters has long since been lost and forfeited by abandonment and

non-user. These inconsistent allegations, rather a denial and an allegation, destroy themselves. This Court has held in *Conley v. Dyer*, 43 Colo. 22, 95 Pac. 304, that there is no such thing as abandonment of a water right which never existed, and that the right acquired only by a conditional decree comes within the principle. In 2 Kinney, (2d ed.), section 1102, is a criticism of this and similar decisions upon the ground that a conditional decree gives an inchoate right which may ripen into an absolute right and is as susceptible of abandonment as if it was perfected. However that may be, the party may not, in the same defense, plead that his adversary never had any rights, and that such rights, as once existed, had been abandoned. This defense is defective in another particular. For aught that appears to the contrary, the acts which tend to show abandonment were committed before the absolute decree was made and, if so, the decree is conclusive against the contention. There are no allegations of acts done subsequent to the decree that, by the most liberal rule, could be held sufficient to show abandonment, and there is an entire absence of any allegation bearing upon the question of intent, which is an essential ingredient, coupled with non-user, to establish abandonment. *O'Brien v. King*, 41 Colo. 487, 92 Pac. 945. The foregoing disposes of all the errors assigned to the various defenses in the answer upon which the decree of the trial court, granting the injunction, rests.

There remains for consideration a ruling of the court denying defendants' motion to amend the seventh paragraph of the first defense, which admitted the allegations of the complaint that the date of priority of the defendants' appropriation was August 15, 1888. This application asks leave to substitute for the admissions sought to be withdrawn, the allegation that the date of this appropriation was May, 1884. The defendants' object evidently was, under the guise of asking the court to interpret the meaning of its decree, to obtain leave to re-open and change an absolute decree, fixing the date of a priority, by extending the same four years earlier, and this long after the decree be-

came absolute and incontestable by a party thereto for any purpose. The trial court said that, if the amendment was a proper one to be made, there was a sufficient explanation for the insertion of the wrong date in the original answer; but denied the application upon the ground that in this action the adjudicating decree could not be altered or changed in this particular. We think the ruling of the court was right. This was a collateral attack of the defendants on the verity of a decree which was absolute and conclusive as against all the world, and, of course, against those who were parties to the proceeding in which it was rendered. This is not like the case of *West Pueblo D. & R. Co. v. Bessemer Irrigating Ditch Co.,* 72 Colo. 224, 210 Pac. 601. That was a case where the sole object of the action was to make a former adjudication decree speak the truth. The plaintiffs in that case asked to have such a decree set aside because the court never intended to, or did, render the decree which was entered by the clerk. It was not a judicial, but a clerical, error that was there rectified. This, however, is a collateral attack upon the decree, and for that reason alone the court denied the application to amend the answer.

But if this were an action, which it is not, to make the record speak the truth, the showing was insufficient. There is a recital or a finding in the adjudicating decree that the work of construction on the ditch of the defendants was begun in May, 1884. The conditional decree, which was afterwards made absolute, was rendered in 1890. There is no finding of fact as to when the water was beneficially applied. There is no finding when the work was completed. The decree fixing the date of priority was August 15, 1888, more than four years after the work was begun. We do not know what the statement of claim was, or what date priority was asked by the defendants' grantors. It may be the court thought the work was not diligently done. If, however, we assume with the defendants, that because of its belief that the so-called map and statement law prohibited the award of a priority as of a date earlier than the date of the filing of such instruments,

the court in this decree fixed the priority as of the date when such statement was filed. There is a claim made, at least an argument, that this filing was August 15, 1888, but it does not follow that, because of the mistaken supposition of the court that the map and statement law was controlling, the decree of the court in following the law was invalid, because this Court subsequently, and in 1899, declared this law unconstitutional. *Lamar Canal Co. v. Amity Land & Irri. Co.*, 26 Colo. 370, 58 Pac. 600, 77 Am. St. Rep. 261. This mistake, if it was a mistake, upon the part of the court in rendering the decree upon, or making it conform to, an invalid law, was not a clerical mistake but an error upon the part of the court in performing a judicial function and could not be corrected, except by a review in accordance with the established practice applicable to such cases. Indeed, in our opinion in this *Lamar Canal Company* case we said, in response to the contention of counsel who claimed that danger and confusion would result in declaring this act unconstitutional: "Rights, if any, which have become vested; priorities, if any, which have been established by decree of court upon the basis of this act and by the lapse of time can not be reviewed are certainly protected. Other rights, if any, which have been settled by judicial decree, but not so as to be beyond the reach of review, or such as are now in process of adjudication, will be determined in accordance with the law as it is and always has been, and not as this invalid act prescribes." So, we say that for all of these reasons the court properly refused the amendment to the answer.

We say further, with reference to that part of the second defense concerning an increase of the natural flow to which the defendants are entitled, that the defense on its face is defective, and that it is inconsistent with itself. In one paragraph of this defense it is alleged that the natural sources of the supply of Willow creek are various springs which are not upon the defendants' lands, but are several miles from the headgate of their ditch and lie around the rim of Grand Mesa. The defendants say that their grant-

ors cleaned out these springs and assembled the water thus developed and added it to the stream, and that at the time of the conditional decree, this increase of the waters was not a part of the original supply. In a later allegation in the same defense they allege that the amount of water thus assembled and developed, was a part and parcel of the volume of water adjudicated to the defendants' Willow creek ditch. The inconsistency of these two allegations is apparent. If the alleged increase in the natural flow was not, at the time of the rendition of the conditional decree, a part of the waters of Willow creek, it is difficult to understand how, by the mere lapse of time, it could become such part of that natural flow at the time of the rendition of the absolute decree in 1916. That it did become such part of the natural flow is, in effect, alleged by a later averment that the water thus assembled and developed was a part and parcel of the 2.43 feet of water adjudicated to the defendants' Willow creek ditch. Only the natural waters of the stream, according to the defendants' contention, could be, or were, included in the decree, and no part of the developed water was thereby affected. These inconsistent allegations eliminate themselves, and there is nothing left of the second defense that even tends to show any rights of the defendants to these waters.

There is another and a substantial reason for saying that defendants have failed to set out in this defense any facts which justify their claim of adding to Willow creek waters which naturally did not, or would not, reach the channel in the absence of the development work. The defendants place much reliance on *Churchill v. Rose,* 136 Cal. 576, 69 Pac. 416. It was there held that one who developed, from a spring situated on his land, waters which increased the natural flow of the creek, is entitled to divert and use the increased amount of water so developed. Defendants seek to apply the doctrine of that case to the alleged development by their grantors of water from the springs which were the very source of the waters of Willow creek. The *Churchill* case is not applicable, first, because the springs

which the defendants here cleaned out were not on their lands.  There is no allegation in this defense which negatives the natural law that the waters of these springs would not, or might not, reach either by surface, or subsurface, flow, the channel of Willow creek.  Indeed, the allegations of the defense itself clearly indicate that there was no other place which they would reach.  The cleaning-out process by defendants' grantors did not add to the natural flow of Willow creek any water in addition to that which naturally would have reached it if no cleaning out of the springs had taken place.  The flow may have been hastened, but it was not augmented.  Mr. Farnham in 3d Farnham on Waters and Water Rights, section 672d, and following, says that the doctrine of developed or artificial waters does not apply to mere removal of obstructions or hastening the flow, so that the actual amount of water which passes along the stream is not increased, but only to cases where the supply of water is added to the stream which would not otherwise have flowed there.  One causing the alleged increase is entitled to divert only the water which he puts into the stream.

In 2 Kinney on Irrigation and Water Rights, p. 2186, and following, the author says that such developed water or subterranean or underground water as is discovered and brought to the surface by the exploitation of man, and which otherwise would have run to waste, may be claimed. He says: "Developed waters, strictly speaking, must be those waters which would run to waste except for their discovery and development."  If such be the rule, the defense of increased supply is radically and fatally bad.  This general doctrine is elaborately set forth in: *Buckers Irr., M. & I. Co. v. Platte Val. I. Co.*, 28 Colo. 187, 63 Pac. 305; *Platte Val. Co. v. Buckers Co.*, 25 Colo. 77, 53 Pac. 334; *Buckers Irr. Co. v. Farmers D. Co.*, 31 Colo. 62, 72 Pac. 49; *Clark v. Ashley*, 34 Colo. 285, 290, 82 Pac. 588; *Bruening v. Dorr*, 23 Colo. 195, 47 Pac. 290, 35 L. R. A. 640.

*Ripley v. Park Center L. & W. Co.*, 40 Colo. 129, 90 Pac. 75, was an entirely different case from the one before us.

There the water in controversy was, by the exertion of one of the parties, artificially produced as the result of draining mines and was contributed to the stream since the rendition of the statutory decree, and formed no part of its natural flow and never would have come into the stream in any way had it not been for his efforts. It appeared that this artificially developed water in its natural state was enclosed in a basin whose walls were granite and practically impervious to water, and none of it ever reached, or could reach, the bed of the natural streams from which the parties in question made their appropriation. The defense here fails to show that defendants have contributed to the natural flow. The court rightly disregarded it.

The case has been with ability admirably presented to this Court. The conclusion reached by the trial court accords with the unbroken line of our previous decisions. A motion for judgment on the pleadings, it is true, is not looked upon with favor. It admits as true the allegations in the pleadings of the opposite party and all reasonable inferences and deductions therefrom. It, however, does not admit allegations that are not well pleaded. Decrees of courts which are admitted to have been rendered, may not be destroyed by allegations which are expressly contrary thereto, or to their legal effect. Well recognized natural and physical laws are judicially known and may not be put in issue by denials of their inevitable effect. Finding no reversible error, the judgment is affirmed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE SHEAFOR concur.