## HOLBROOK IRR. DIST. v. ARKANSAS VALLEY SUGAR BEET & IRRIGATED LAND CO. et al.

### No. 1676.

District Court, D. Colorado.
Jan. 2, 1929.

A. W. McHendrie, of Trinidad, Colo., and Marion F. Miller, of La Junta, Colo., for plaintiff.

Henry C. Vidal, of Denver, Colo., for defendants.

SYMES, District Judge.

This action was started in the district court for Bent county, Colo., and was removed here by reason of diversity of citizenship. Broadly speaking. it involves an adjudication of water rights between two ditches in different water districts of the same water division. It is equitable in nature, in that complainant asks its decreed priority be quieted, and adjudged senior to defendant's decreed priority of an earlier date, and for general injunctive relief.

The matter is now before the court on the defendant's motion to dismiss the bill. This tests the sufficiency in law of the six causes of action exhibited by the bill.

The disposition of this motion will not necessarily end the suit. The arguments and briefs have been able and exhaustive. For use as the case proceeds, I have digested in very brief form the bill and my notes as follows:

The first cause of action alleges that plaintiff is owner of Holbrook irrigation system, consisting of the Laguana, or Holbrook canal, irrigates 20,000 acres in Crowley and Otero counties in division 2, district 17, headgate on the north bank of the Arkansas river, runs easterly. The Laguana canal begun September 25, 1889, completed March 1, 1892, to a capacity of 600 feet; canal 20 feet at the bottom, 34 feet at the top, and 7 feet deep; carrying capacity 600 cubic feet of water per second of time, which amount has been diverted and carried through the canal, and applied to about 20,000 acres of land every year since 1892.

Defendant the Arkansas Sugar Beet & Irrigated Land Company is owner of the Amity canal and reservoir system, and claims certain water rights out of the Arkansas for the irrigation of land in division 2, district 67.

Plaintiff owns priority No. 10, dated September 25, 1889, for 155 cubic feet per second; priority 24, as of date August 30, 1893, for 445 cubic feet per second, total 600 cubic feet, decreed to the Laguana canal. Plaintiff's priority No. 10, for 155 cubic feet, was decreed in a statutory proceeding in the district court for Bent county, district 17, division 2, on April 8, 1905. Priority No. 24, for 445 cubic feet, was adjudicated in the same proceeding. More than four years have elapsed since the entry of said final decrees.

October 14, 1918, an adjudication decree was entered by the District Court of Bent county in water district No. 67, division 2, granting to the Amity canal 500 cubic feet as of date of April 1, 1893, priority number 1918-2. Plaintiff alleges that the right to this 500 cubic feet so granted to the Amity canal for the Arkansas Valley Sugar Beet & Irrigated Land Company is void for the following reasons:

(a) That the consumers under said Amity ditch have not, and could not beneficially use said 500 cubic feet of water, because said

amount was not and is not available for diversion, and such amount has never been available after the adjudicated claims and prior rights to water in said river have been satisfied, and, if the said amount has ever at any time been taken, it has been diverted and taken in violation of adjudicated rights of earlier appropriators, particularly the rights of the plaintiff.

(b) For the reason that no preliminary survey or construction work was done in behalf of said appropriation on or about April 1, 1893, or for a long time thereafter, or which was intended or could legally serve as a basis for such appropriation.

(c) No preliminary survey for construction of any kind was had or commenced prior to August 30, 1893.

(d) That the right of said additional 500 cubic feet of water so awarded to the defendant did not accrue, or become fixed until long after plaintiff's priority No. 24, as of August 30, 1893, for 445 feet, as heretofore alleged, had become absolutely fixed, and that plaintiff's appropriation antedates defendant's, because no preliminary or other work was commenced or performed by defendants prior to August 30, 1893; that at no time since April 1, 1893, or October 14, 1918, had rights of the plaintiff to said 445 cubic feet of water priority No. 24 been interfered with or questioned by defendant as being superior to the 500 cubic feet priority as of date of April 1, 1893, except as hereinafter stated. No demand was made upon the water officials for the right to said cubic feet of water, in preference or exclusion of the right of the plaintiff to the said 445 cubic feet; but since May 1, 1920, the defendant officials and the sugar beet company have unlawfully on many occasions diverted to the Amity canal all or part of said 500 cubic feet of water, to the exclusion of the rights of the plaintiff to its 445 cubic feet, or that there has been sufficient water to satisfy the plaintiff's rights, after satisfying the rights of appropriators senior to the plaintiff. Said defendants threaten to continue this practice. That this practice will cause irreparable damage to the plaintiff and the appropriators and users of water from the Laguana canal of the Holbrook irrigation system.

The second cause of action adopts paragraphs 1 to 13 of the first cause of action, with the exception of paragraph 9; then alleges: That the defendant's right to said 500 cubic feet of water is junior and inferior to the plaintiff's right to said 445 cubic feet, for the following reasons:

(a) The plaintiff has been in public, notorious, and absolute possession of its decree of 445 feet as of date of August 30, 1893, and ever since that date, and the same has been adverse to the claim of the defendant, and well known to said defendant; that the latter, until May, 1920, made no claim to said water against plaintiff's possession and use; that the defendant's alleged claim, if any, to said water, accrued more than 20 years prior to the time it asserted its right thereto, and therefore it is barred by the 20-year statute of limitations.

The third cause of action adopts paragraphs 1 to 13, inclusive, with the exception of paragraph 9; then alleges that the defendant's priority is void as against the plaintiff's rights for the following reasons:

(a) That the defendant's predecessor in title to the Amity Land & Irrigation Company was a party to the general adjudication in water district 67, division 2, begun in November, 1893, and in which the said Amity Land & Irrigation Company filed its statement of claim for priority on January 31, 1894, and later, on March 3, 1894, filed in said suit its amended statement of claim for priority, participated in the proceedings, which resulted on July 1, 1895, in a final decree awarding to the Amity canal 283.5 cubic feet of water, as of February 21, 1887; that at that time it did not claim any priority as of April 1, 1893; that, if defendant's pretended right to 500 second feet of water, as of the said date, ever existed, it was in existence at the time of said adjudication aforesaid, when said original claim was filed, and the defendant, or its predecessors, were bound to assert its claim at said adjudication, or be forever barred; and for that reason its successor cannot now assert its claim to an earlier date to that of said decree, to wit, July 1, 1895.

(b) By reason thereof, the plaintiff had a right to believe that the defendants had no claim whatever in and to said 500 cubic feet of water, and in reliance thereon, proceeded to its appropriation and use of its 445 cubic feet of water with the knowledge and acquiescence of the defendants and their predecessors without objection, and because thereof the defendants, in equity and good conscience, are estopped from claiming priority to 500 cubic feet over plaintiff's priority to 445 cubic feet.

The fourth cause of action adopts paragraphs 1 to 13, inclusive, with the exception of paragraph 9 of the first cause of action; that the defendant's priority to 500 cubic

feet as of April 1, 1893, so decreed to the Amity canal, is junior to the plaintiff's 445 cubic feet for the following reasons, to wit:

(a) That the right of the plaintiff to its 445 cubic feet became absolute on August 30, 1893; that prior to said date the plaintiff had completed the construction of the Arkansas canal to its full capacity of 600 feet of water, and diverted said amount and applied and beneficially used it, and has so continued to do since August 30, 1893; that the defendants prior to August 30, 1893, and ever since, have had notice of plaintiff's rights, and of the diversion and use of said water by the plaintiff, and no adverse claim has ever been made by defendants until May, 1920; that defendants, by acquiescing in allowing the development of land by use of said water during said period from August 30, 1893, to May, 1920, are now estopped in equity from making any claim.

The fifth cause of action adopts paragraphs 1 to 13, excluding paragraph 9, and defendant's right of priority decreed to the Amity canal is inferior to the plaintiff's for the following reasons:

(a) That the defendant's right, if any, was abandoned subsequent to the time it became fixed and accrued, if ever, prior to the time the defendant entered the general adjudication, and filed their statement of claim, because there was a general adjudication in said water district 67, division 2, initiated on the 25th of July 1904, in which adjudication various parties claimed the right to the use of water in district 67, in which they appeared and filed statements of claim, and introduced evidence thereof, and in which a final decree was entered in April, 1906, awarding priorities; that the defendant did not appeal, file its claim, or make any claim whatever in said adjudication; that the latest date of any decrees awarded by the said final decree, and said final adjudication, was awarded the Taylor ditch No. 2, as of date of March 15, 1904.

(b) That more than two years elapsed before said final decree and said adjudication before the adjudication of said 500 feet awarded to the defendant was begun; that said defendant took no steps to oppose said adjudication, or appear therein; that, by reason of said general adjudication having been held and completed on April 27, 1906, defendant was not bound thereby, and could not ask a date for its appropriation of 500 feet of water prior to March 15, 1904, as above set forth.

(c) That more than four years have elapsed since said final decree, and defendants have taken no steps to modify the same. For these reasons the defendants have waived and abandoned their rights, if any they had, and are now barred from the time of entering the decree awarding them 500 cubic feet of water per second of time, as of April 1, 1893.

The sixth cause of action adopts paragraphs 1 to 13, inclusive, except paragraph 9, etc., and then alleges:

(a) That the defendant's right to 500 cubic feet of date of April 1, 1893, is inferior to plaintiff's right to 445 feet, because defendant's said right was waived, as there was a general adjudication had in district 67, division 2, begun on November 8, 1908, in which various parties claiming rights in district 67 appeared. Adjudication was had November 4, 1909, awarding numerous priorities. The latest date of any of the priorities on the tributaries to the Arkansas was of date of February 10, 1906, and upon the Arkansas River itself December 1, 1895. Defendant did not appear therein or file any claim.

(b) That two years elapsed after said final decree and said adjudication before the adjudication of the 500 feet to the defendant was done, and defendant took no steps to oppose adjudication or appear therein. Said adjudication was finally completed on the 4th of November, 1909; that defendant was bound thereby and could not claim a date for its pretended appropriation of 500 feet prior to the date of the latest decree above set forth; that four years have elapsed since without the defendant questioning said decree; that therefore defendant has waived and abandoned its rights to said 500 feet of water.

### Discussion.

■ The first cause of action, if later put in issue by defendant, calls for a determination of the proper date of defendant's priority, now adjudged to be as of April 1, 1893. Complainant charges that it should be dated some time after August 1st of that year. This cause is good as against the motion. The objections raised by defendants are not seriously urged either in argument or in the briefs.

In the second cause of action plaintiff alleges that he has been in public, notorious, and absolute possession of his decreed water ever since the 30th of August, 1893, that the

same has been adverse to the defendant's pretended appropriation of 500 cubic feet of water as of April 1, 1893, and that this has been known all that time by the defendant, who made no claim to his appropriation until May, 1920. This is not an allegation that the plaintiff was claiming the same identical water that the defendant was, but rather that he was claiming that amount of water out of the river as of that date, as against all other users, and not the defendant alone. His action in obtaining a priority in a statutory proceeding confirms this view, and is entirely different from the assertions of a hostile title to something that belonged to the defendant, as it is not an allegation that plaintiff actually took possession of some of the defendant's property, and deprived him of it for 20 years.

■ To put it another way: Suppose plaintiff did claim, and openly and notoriously use his 445 feet during all that time, it would not be sufficient to support his legal theory. Under the decisions he must allege that the water he was using belonged to the defendant, and that he actually deprived him of it for the statutory period. Defendant owns an adjudicated priority secured in the manner provided by law, and, in the absence of further allegations, how can it be said he abandoned it, or was forcibly deprived of it, simply because the plaintiff was also taking water out of the same river, either under a similar adjudication, or some other claim or right.

The state of Colorado many years ago codified the law and provided a procedure for the adjudication and determination of water rights within the state. The state was divided into water divisions, and each division into water districts. A division embraces, as a rule, the entire watershed of a given stream, and the districts various parts thereof up and down the river, including its tributaries. The use and flow of water is regulated by a division official—the superintendent of irrigation or the division engineer. Within each district this duty is performed by his subordinate, the water commissioner. Comstock v. Ft. Morgan Co., 60 Colo. 101, 151 P. 929; McLean et al. v. Farmers' High Line Canal Co., 44 Colo. 184, 98 P. 16. For the purposes of adjudicating water rights between the users, the district is the legal unit. The act created an in rem form of action and procedure sui generis. The water is finally allocated, however, by the division engineer, treating all the decrees on the river as one, without regard to districts. O'Neill v. Irrigation Co., 56 Colo. 545, 139 P. 536; Ft. Lyon Canal Co. v. Arkansas Valley Co., 39 Colo. 332, 90 P. 1023; Lower Latham Ditch Co. v. Louden, etc., Co., 27 Colo. 267, 60 P. 629, 83 Am. St. Rep. 80.

Every water user or claimant within the district has the right to participate in, and can be bound by, a district adjudication proceeding. Other parties using water on the same stream, but outside of the particular district, are barred therefrom, irrespective of the fact that the adjudication and decree therein may adversely affect their rights to water out of the same stream. The decree in a so-called district adjudication suit does not become final for two years, but thereafter it is conclusive between all parties and ditches served with notice within the district. If not a party, and not served with notice, the four-year limitation statute applies. Broad Run Inv. Co. v. Deuel & Snyder Imp. Co., 47 Colo. 573, 108 P. 755.

Of course such procedure would be arbitrary and present grave constitutional questions, but for the fact that the statute gives to parties outside the district their day in court to assert rights adversely affected by a district adjudication proceeding from which they are barred. It is therefore provided that nothing in the act, or any decree rendered under the provisions thereof, can prevent such an outsider from bringing or maintaining a suit in the proper court to determine any claims or priorities between users in different districts, provided it is brought within four years from the time a district adjudication decree becomes final. Fort Lyon Canal Co. v. National Sugar Mfg. Co., 68 Colo. 36, 189 P. 252.

■■ The state has the power to provide reasonable means for determining rights in and about the use of water, and parties within a district are bound as between themselves by the statutory district adjudication. Parties in one district are bound by decrees in other districts after four years. Barker v. Harvey, 181 U. S. 481, 21 S. Ct. 690, 45 L. Ed. 963; O'Neill v. Northern Colo. Irr. Co., 56 Colo. 545, 139 P. 536; Id., 242 U. S. 20, 37 S. Ct. 7, 61 L. Ed. 123; Ft. Lyon Canal Co. v. Ark. Valley, etc., Co., 39 Colo. 332, 90 P. 1023.

This cause of action is, in effect, an allegation that the defendant must, in order to protect its appropriation, have done something more than participate in the statutory proceedings. The defendant's priority of April 1, 1893, was decreed in a statutory suit begun in 1911, and terminated by decree in

1918. Shortly thereafter the water officials, joined as defendants, recognized it.

The district and division officials exercise only statutory powers, and our attention has not been directed to any authorities that say they shall recognize claims to water that have not been adjudicated by some court of competent jurisdiction; so, irrespective of the claimed date of defendant's priority, or of the time it first asserted it, it could not have been recognized by the defendant officials until after 1918. Any attempt to take water out of the river during the time the plaintiff says defendant should have asserted its rights would have met with prompt resistance by the officials, and availed defendant nothing.

After the decree of 1905, and not before, the defendant officials were required to give heed to the plaintiff's priority and appropriation. In 1911, when the general adjudication suit was begun in district 67, defendant did all that the statute required of it; that is, it claimed its appropriation, and in due course offered testimony in support. So it is hard to see how this lapse of seven years can be counted against the defendant.

The authorities cited by plaintiff do not support his contention under the facts of the instant case. For instance, in German Ditch & Reservoir Co. v. Platte Valley Irrigation Co., 67 Colo. 390, 178 P. 896, the court propounded this question: Can water rights be established by prescription and adverse use, in derogation of statutory provisions, by one who has had full opportunity to assert his rights thereunder? It answered the question in the negative, holding that water subject to decreed priorities comes first, and that interference therewith will not be tolerated, and inferentially said that the so-called open and notorious use of waters without protest for more than 20 years cannot stand as against rights adjudicated in statutory proceedings. Haines v. Marshall, 67 Colo. 28, 185 P. 651, recognized that the use of water from a particular reservoir over a 30-year period conferred an easement by prescription against those who knew and acquiesced in the use. It was a private suit, concerning water from a private reservoir located on private land; so manifestly the situation presented was not within the purview of the adjudication statute. In Sebold v. Rieger, 26 Colo. App. 209, 142 P. 201, the landowner gave his neighbor a right of way over his land for a lateral ditch, helped in the construction thereof, and permitted him to enjoy it for 25 years without question. No decreed

rights were involved. This, of course, created an absolute title.

The opinion in Edwards v. Roberts, 26 Colo. App. 538, 144 P. 856, discusses no points material here. The case merely involved rights between adjoining landowners.

In Allen v. Swadley, 46 Colo. 544, 105 P. 1097, according to the opinion, the controversy was purely one of fact.

In Bieser v. Stoddard, 73 Colo. 554, 216 P. 707, the syllabus reads: "A right to the use of water may not be established by prescription and adverse use in derogation of statutory provisions, and of the decree rendered thereunder, by one who has full opportunity to assert his right thereunder."

Theoretically, perhaps, permanent water rights may be acquired by prescription, even as against an appropriator, by uninterrupted, open, and notorious adverse use under a claim of right for a period of 20 years; but, even so, the other party, or parties, must have knowledge of the use made of his, or their, property, and the use must be hostile. This imports, of course, more than the mere use of water from a common source. Some authorities say that it must be such a use as would furnish grounds for a suit by the owner, and, if at any time there is sufficient water in the stream for all, during such period, at least, there can be no invasion of the other party's rights sufficient to start or continue the statute running. There is no statement in this cause of action of facts that meet these requirements. It merely sets forth the legal conclusions necessary to a statement of counsel's theory.

The first cause of action, adopted as part of this one, contains an allegation that the plaintiff, as well as the defendant, presented this identical claim in an adjudication proceeding. While not conclusive, of course, it is indicative on the question of how hostile the plaintiff was toward the defendant. It is true the defendant did not get his decree until 1918; yet he gave notice several years before, by filing his claim in the adjudication suit. These proceedings might properly be said to constitute, in equity, at least, a public record available to any one desirous of examining the data relating to the status of water rights generally in this stream.

Adopting the language of the German Ditch Company Case, supra, while we do not declare that under no circumstances can the right to the use of water be established by prescription, yet the recognition of plaintiff's claim of prescription in the instant

case would be to set aside the statute and adjudications made thereunder. A chancellor has no such power. In this class of litigation it is the effect and intent of all the pertinent decisions of the Colorado courts, which we must follow, to give all possible recognition and the fullest effect to statutory decrees. The exceptions are very few, and are being narrowed as time goes on. Likewise, the remedy therein prescribed, and availed of by plaintiff in the first cause of action, seems ample to meet most any situation.

The third cause of action is a plea of estoppel. It is argued that the Amity ditch, and its successors the defendant, having failed to assert this particular alleged priority in the first adjudication proceeding in district 67, although it did claim and secure a different one, cannot now assert a priority earlier than the date of said final decree, to wit, July 1, 1895; that after July, 1895, the plaintiff was justified in assuming that defendant had no other claims; that it then proceeded at great cost to make its appropriation and use of 445 cubic feet of water, of all of which defendant had knowledge; that for these reasons the defendant is estopped from asserting any claim senior to plaintiff's.

▇▇▇ No facts are exhibited to show just when plaintiff, relying upon defendant's conduct, took a position in respect to the defendant, which would now be prejudiced by defendant's change of position. As stated by counsel for defendant, a water user in a particular district looks to the officials of other districts to see that his rights are not interfered with, and is not required to make demand on any particular user therein for water. A lower district can only demand that sufficient water be permitted to come down the river to supply in turn its adjudicated priorities. It is doubtful whether the plaintiff can take advantage of what defendant failed to assert in the statutory proceedings held within his own district, to which plaintiff is of necessity a stranger. Its decree is only res adjudicata between parties within the district.

Counsel for plaintiff argues that the defendant misled plaintiff by not making a claim to its 500 cubic feet as of April 1, 1893, in the first adjudication suit. But it is disclosed that the same court in a later adjudication gave the defendant a priority as claimed, and in the absence of more specific allegations its decree should not be lightly set aside.

My present impression is that all the defendant had to do in order to establish a priority as of April 1, 1893, was to make an actual appropriation and claim and prove it in the first district adjudication suit that followed in the proper district. The plaintiff, in effect, argues that he must go further and give notice thereof to all parties up and down the river, including plaintiff, who were likewise attempting to establish priorities. Is a water user bound at his peril to notice what goes on in other districts, other than what is disclosed by its decrees? These he can attack at any time within four years. Sections 1784, 1785, Comp. Laws Colo. 1921. A part of plaintiff's argument on this point might more properly be directed to the first cause of action, for after all "there is but one primary right, viz. the right to the use of the water, based on ownership; but one violation of that right, viz. deprivation of use." Farmers' Canal & Res. Co. v. Webber, 70 Colo. 348, at page 351, 201 P. 555, 556.

So if plaintiff succeeds in sustaining his first cause of action, it is more than likely the others will become immaterial.

▇▇▇ Under the circumstances set forth, was defendant under a positive duty to speak? Mere passive acquiescence does not ordinarily raise an estoppel. That easements may in a proper case be secured through the acquiescence or silence of a property owner is the law in Colorado. Arthur Irrigation Co. v. Strayer, 50 Colo. 371, 115 P. 724. But the facts of that case are altogether different from those pleaded here. The most that plaintiff claims is a positive acquiescence, which, where water rights are involved, does not, as a rule, create an estoppel. Equitable estoppel imports overt acts and declarations of the party charged, designed to induce another to alter his position, coupled with the requirements that the other party must have acted upon the same to his injury. The effect of an equitable estoppel is to transfer property rights from one party to the other, so it must be established by clear and competent evidence. See, generally, Lower Latham Ditch Co. v. Louden Irrigating Canal Co., 27 Colo. 267, 60 P. 629, 83 Am. St. Rep. 80.

▇▇▇ For these reasons this cause of action is not sufficient in law. However, in view of the novelty and importance of the question raised, plaintiff may, if he so elects, reframe it, making it more specific and certain; then, after answer, we can examine the question again.

▇▇▇ The fourth and fifth causes of action fail to disclose an abandonment, and cannot stand. Nonuse of decreed or claimed water may be due to such a variety of causes that

the court cannot, in the absence of a better statement, speculate as to what the plaintiff relied upon. The other question argued in the plaintiff's brief under this heading, the proper date of defendant's priority, is covered by the first cause of action.

The sixth cause of action falls for the same reasons.

In conclusion: The plaintiff, claiming to be aggrieved by the decrees in district 67, has availed himself of the proper statutory remedy. Ft. Lyon Canal Co. v. National Sugar Mfg. Co., 68 Colo. 36, 189 P. 252. Plaintiff, however, must apprise the court and the defendant of what his rights are, and in what respect they are superior to those of the defendant. Kobilan v. Dzuris, 71 Colo. 339, at page 343, 206 P. 790.

This bill was drafted in conformity with the state practice. Now that it is in the equity side of the federal court, it would expediate the proceeding if it were redrafted in compliance with the equity practice in respect to conciseness, accuracy, and clearness. Equity Rule 25; Hodgman et al. v. Atlantic Refining Co. et al. (D. C.) 274 F. 104. Pittsburgh Water Heater Co. v. Beler Water Heater Co. (D. C.) 222 F. 950. The draftsman can decide whether or not the first cause of action should be restated.

The motion to dismiss is sustained as to the second, third, fourth, fifth, and sixth causes of action. For the reasons stated, the third may be redrafted, if complainant so elects, within 20 days. The defendant may file an answer within 30 days thereafter, containing, it is suggested, its law defenses, as well as its allegations of fact.

This procedure is suggested in view of the unusual delay in getting the matter at issue. The matter will then be set for hearing at the earliest possible date, and no adjournments granted unless agreed to by counsel. It is so ordered.