[No. 5271.]
[No. 2902 C. A.]

WESTERKAMP v. CHICAGO, BURLINGTON AND QUINCY RAILWAY COMPANY.

1.  Railroads—Damages—Contributory Negligence.

    Plaintiff, in an inclosed milk wagon and before daylight, with knowledge that a train was about due, approached a railroad crossing. He testified that when 190 feet from the track he commenced looking toward the east, and when within 50 or 60 feet he stopped, looked, and listened, but neither heard nor saw a train, although he noticed the switch and other lights between one-quarter and one-half mile east of the crossing, and that he continued to look and listen until within 25 or 30 feet of the crossing, but saw no train until just as his horses started to cross the track, when the headlight of the locomotive approaching from the east flashed on him, and he was struck. The railroad was on a fill, and the crossing was but a short distance west of a bridge over a river, and, from a point 25 feet before reaching the track, plaintiff's view was unobstructed for an indefinite distance toward the east, and a witness who was

in advance of plaintiff between 100 and 200 feet noticed the train approaching as he crossed the track, when it was then between a quarter and a half mile away. Held, that, as plaintiff must have seen the train if he had looked as he testified, he was negligent as a matter of law, and could not recover.—P. 295.

2. **Practice in Civil Actions—Evidence—Undisputed Facts—Submission to Jury—When Proper.**

The rule that, where the statement of a witness is not disputed by other witnesses, his credibility in this respect should be submitted to the jury and not determined against him by the court, does not apply where there is but one inference which can reasonably be drawn from the undisputed facts; since, where a physical situation renders the right of a matter clearly beyond all reasonable controversy, there is no conflict to be solved by a jury, because no just verdict can be rendered contrary to all reasonable probabilities, and a court will treat as unsaid by a witness that which in the very nature of things could not be as said.—P. 297.

3. **Railroads—Damages—Contributory Negligence — Ordinances —Reliance.**

Where, in an action for injuries received by plaintiff at a railroad crossing, plaintiff testified that he did not see the train which collided with his wagon, he cannot be heard to say that in passing over the crossing ahead of the train he relied on a city ordinance prohibiting the operation of trains at more than six miles per hour at that point, since a party cannot excuse his act by reliance upon that which, according to his own statement, is not a fact.—P. 298.

*Error to the District Court of the City and County of Denver.*

*Hon. John I. Mullins, Judge.*

Action by August Westerkamp against The Chicago, Burlington and Quincy Railway Company. From a judgment for defendant, plaintiff brings error.                          *Affirmed.*

Messrs. SKELTON & MORROW, for plaintiff in error.

Messrs. WOLCOTT, VAILE & WATERMAN (Mr. W. W. FIELD and Mr. HENRY McALLISTER, Jr., of counsel), for defendant in error.

Plaintiff in error brought an action to recover damages for injuries sustained, due to a train of defendant in error colliding with a wagon he was driving. The trial court, at the conclusion of the testimony of plaintiff, directed a verdict for the defendant, upon the ground that it established that the contributory negligence of plaintiff was the proximate cause of his injury. Plaintiff brings the case here for review on error. His counsel contends that the testimony establishes that the defendant was negligent, and that plaintiff was not guilty of contributory negligence, or that the latter question should have been submitted to the jury. The testimony bearing on these questions is substantially as follows:

About 6 o'clock on the morning of January 2, 1902, plaintiff was driving an inclosed milk wagon on Watervleit avenue, in the town of Globeville. The track of defendant crosses this avenue at an acute angle. Watervleit avenue runs north and south, and the track of defendant in a northeasterly and southwesterly direction. This relative position of the avenue and the track gives the space between the track to the north and the east side of the avenue a triangular shape. Plaintiff was driving south with the intention of crossing the track of defendant. He was familiar with the surroundings, having been engaged in driving a milk wagon over this route for a considerable period previous to his injury, and knew that a train of defendant was due about this time. The morning was dark, cloudy and foggy. For a distance of about 190 feet from the intersection of the avenue and the track of defendant the triangular space mentioned has a number of cottonwood trees growing upon it, about twelve, but not so close to each other that at that season of the year they would interfere to any considerable extent with a clear view of the track to the northeast. There was

also located upon this space two telephone poles.
Something over 500 feet northeast of the inter-
section of the avenue and track a cottonwood tree
was located on defendant's right of way, about
thirty feet north of its track. The track is on a fill,
about eight feet higher than the adjacent ground.
At a distance of about 275 or 300 feet east of the
point where the avenue crosses the track, the latter
crosses a bridge over the Platte river. This bridge
is 200 feet in length, so that its east end is from
475 to 500 feet from the crossing in question. On
the west side of the avenue, distant forty-seven feet
from the main track, a feed store is located. Be-
tween this building and the track is a side-track,
upon which cars frequently stand, so that an un-
obstructed view of the track for any distance to the
west, when cars are on the side-track, cannot be ob-
tained until after it is passed. From a quarter to
a half mile east of the crossing there are switch and
other lights, near or over the track. Plaintiff was
familiar with these, as he had often observed them
before. When plaintiff, according to his own state-
ments, was distant about 190 feet from the track,
he commenced looking towards the east for an ap-
proaching train, and when within fifty or sixty feet
of the track, stopped his team, opened the door of
the wagon, looked and listened for a train, but did
not see any approaching. He says, to use his own
language: "The point where I stopped was par-
ticularly favorable to a view of the track from the
north and east directions." He observed the switch
and other lights above referred to, but did not see
the headlight of a locomotive drawing a train ap-
proaching from the east, although he had often ob-
served such a light on other mornings, when driving
in the same direction along the avenue. He was
driving slowly, and continued to look to the east until

he reached a point about twenty-five feet north of the track, but did not observe a train approaching. From the plat introduced, it appears that from this point he had an unobstructed view of the track for an indefinite distance to the east, for there does not appear to be anything from that point to obstruct the view in that direction. When he reached the twenty-five-foot point he turned his attention to the west, and just as his horses started to cross the track, the headlight of a locomotive, drawing a train and approaching from the east, flashed upon him. He struck his horses with a whip in an endeavor to get across the track ahead of the train, but his wagon was caught and destroyed, and he was severely injured. The train approached the crossing at a speed of from twenty to thirty miles an hour. No bell or whistle was sounded. There was no watchman on duty, and an ordinance of Globeville prohibited trains running at a greater speed than six miles per hour. A witness, who was in advance of plaintiff between 100 and 200 feet, noticed the train approaching as he crossed the track, and estimated that it was then between a quarter and half a mile away. The headlight of the locomotive was burning brightly. Another witness on behalf of plaintiff, who was on the porch of his place of business about 350 feet distant from the crossing, saw the train approaching. When he first saw it, it was 2,500 feet from the crossing. He noticed the headlight of the engine, for that was what attracted his attention, and could see that it was coming rapidly from the east.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Although the evidence establishes negligence on the part of the defendant, plaintiff cannot recover if his failure to exercise that degree of care which a

reasonably prudent person would have exercised under similar circumstances was the proximate cause of his injury.—*C. R. I. & P. Ry. Co. v. Crisman*, 19 Colo. 30. The important question, therefore, to determine, is: whether or not the testimony established, as a matter of law, that plaintiff was guilty of negligence, but for which he would not have been injured.

He knew a train was about due, and testified that distant about 190 feet from the track he commenced looking towards the east, and, when within fifty or sixty feet of the crossing, stopped his team, and looked and listened for an approaching train from that direction; that he did not hear or see one; that he noticed switch and other lights from a quarter to half a mile distant, in the direction he looked; that as he approached the track he continued to look and listen until within twenty-five or thirty feet of the crossing, but neither saw nor heard the train which collided with him, but did see the switch and other lights above referred to. He then drove upon the track and was injured. Having testified that he stopped, looked and listened for an approaching train, and not discovering one, his counsel invoke the rule that the credibility of his statements in this respect should have been submitted to the jury. This rule is not applicable, where there is but one inference which can reasonably be drawn from the undisputed facts. At the point where plaintiff first stopped there was nothing to obscure his view along the track towards the east for a distance of 2,000 feet or more, other than the trunks of a few leafless trees, and a a couple of telephone poles, which would have done nothing more than momentarily obscure the headlight of the locomotive when a tree or pole was in the direct line of his vision and the headlight. He did notice the other lights referred to, and neces-

sarily at this time the headlight was rapidly and continually changing its position. It was burning brightly. This is established by witnesses on his own behalf, one of whom crossed the track between 100 and 200 feet in advance of him, and discovered the approach of the train by its headlight, and estimated that the train was from a quarter to half a mile distant. The other witness noticed the same condition from a different point of view at the time when, according to all the testimony, the plaintiff himself was so situated that if he had looked in the direction of the approaching train, he, also, should have recognized the headlight in question by its movement towards him. He says he continued to look until within twenty-five or thirty feet of the track, but did not see the train approaching from the east. From this point, according to the undisputed testimony, there was nothing whatever to obstruct his view for an indefinite distance to the east. At this time the approaching train, by a comparison of its speed with that he was traveling, could not have been distant more than 250 or 300 feet, and yet, according to his own statements, he did not hear the rumble which it must have made in crossing the bridge which it had just passed over, or distinguish its headlight from that of other lights shining at a quarter to a half mile beyond. He knew a train was about due from the east over the track he was about to cross.

In such circumstances it seems incredible that he looked toward the east, as he says he did, and failed to notice the rapidly moving headlight when he first began to look, or its proximity when he was within twenty-five or thirty feet of the track, when the headlight must have been so distinctive by reason of its brilliancy and relative position to the other lights beyond of which he speaks. Clearly, although

it may have been cloudy and foggy at the time, these conditions were not sufficient to obscure the brilliant headlight of the locomotive when he first looked, or when it was but 250 or 300 feet distant, when lights of less power in its near vicinity were discernible at the time he first looked, and when he last looked, from a quarter to half a mile beyond. From all the facts and circumstances, there is but one conclusion deducible, viz., he did not look; because, if he had, he could not have failed to discern the train approaching the crossing he was about to drive over.

Where a physical situation renders the right of a matter clearly beyond all reasonable controversy, there is no conflict to be solved by a jury, because no just verdict can be rendered contrary to all reasonable probabilities. In such circumstances the testimony of a witness to that which is physically impossible must be rejected, and a court will treat as unsaid by a witness that which, in the very nature of things, could not be as said. A trial court should not submit to a jury the determination of a fact about which, from all the testimony, there can be no dispute. Plaintiff not having looked for the approach of the train which struck his wagon, failed to exercise that degree of care which he should, and it is beyond dispute that such failure was the proximate cause of his injury. The trial judge was, therefore, right in directing a verdict for the defendant.—*Northern Pacific Ry v. Freeman,* 174 U. S. 379; *Blumenthal v. B. & M. R. R. Co.,* 97 Me. 255; *Day v. B. & M. R. R. Co., ibid.,* 528; *Swart v. N. Y. Cent. & H. R. R. R. Co.,* 80 N. Y. Supp. 906; *Marland v. Pittsburgh & L. E. R. Co.,* 123 Pa. St. 487; *Swart v. N. Y. Cent. & H. R. R. R. Co.,* 81 N. Y. App. Div. 402; *Fiddler v. N. Y. Cent. & H. R. R. R. Co.,* 64 N. Y. App. Div. 95; *Hook v. Mo. Pac. Ry. Co.,* 162 Mo. 569; *Dolfini v. Erie R. R. Co.,* 178 N. Y. 1; *C. & N. W. Ry. Co. v. Andrews,*

130 Fed. 65; *Marshall v. Green Bay & W. R. Co.*, 125 Wis. 96; *C. & E. I. R. R. Co. v. Kirby*, 86 Ill. App. 57; *Fiddler v. N. Y. Cent. & H. R. R. R. Co.*, 71 N. Y. App. Div. 721.

Many cases are cited by counsel for plaintiff in support of their contention that the question of his negligence should have been submitted to the jury. These cases, when analyzed, in no sense conflict with the conclusion we have reached, because it appears therefrom that the testimony bearing on the subject of the want of care of the party injured was either conflicting or of a character from which different inferences might reasonably be drawn, on that question; or it appeared that the injured party had made a mistake with respect to the approach of a train in such circumstances as made it necessary to leave it to a jury to determine whether or not such mistake was the result of a failure to exercise proper care.

It is also contended on behalf of plaintiff that he might have assumed that the train would not approach the crossing at a greater rate of speed than that allowed by the ordinances of Globeville. This question is not presented, because plaintiff says he did not see the train which collided with his wagon; consequently, he cannot be heard to say that in passing over the crossing in question he relied upon being able to do so safely under the belief that the defendant would observe the ordinances in operating its trains. A party cannot excuse his act by reliance upon that which, according to his own statement, is not the fact.

The judgment of the district court is affirmed.

*Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMPBELL concur.