WINTERBERG *v.* THOMAS.
(246 P. [2d] 1058)

Decided July 7, 1952.   Rehearing denied July 28, 1952.

Messrs. JANUARY & YEGGE, Mr. RICHARD D. HALL, for plaintiff in error.

Mr. PHILIP J. CAROSELL, Mr. FELIX D. LAPORE, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will herein refer to the parties as they appeared in the trial court, where plaintiff in error was defendant and defendant in error was plaintiff.

The complaint was based upon a collision between a motorcycle ridden by plaintiff and an automobile driven by defendant. The accident occurred at the intersection of Grant street and Forest Drive in the City and County of Denver, on May 12, 1950. Plaintiff sought to recover damages for personal injuries sustained in said collision, and alleged that defendant's negligence was the proximate cause of the accident and resulting injuries. Defendant denied the negligence attributed to him by plaintiff, and alleged that the injuries and damage sustained by plaintiff were proximately caused or contributed to by plaintiff's own carelessness.

Trial was to the court without a jury and resulted in judgment for plaintiff in the sum of $7,500.00, together with interest and costs. Defendant seeks reversal of the judgment by writ of error.

It is important, in considering the issues, to visualize the physical circumstances at the scene of the accident. Grant street is a one-way street going south. Forest Drive is a two-way narrow street on the south side of Cherry creek running northwesterly and southeasterly. Speer Boulevard is on the north side of Cherry creek paralleling Forest Drive. At the intersection of Speer Boulevard and Grant street, traffic is controlled by traffic lights. Similar traffic controls govern the movement of traffic at the intersection of Forest Drive and Grant street.

That portion of the evidence concerning which there was no dispute, was to the effect that plaintiff was riding a motorcycle in a northwesterly direction on Forest Drive and defendant was driving his automobile south on Grant street. At the time of the collision plaintiff's motorbike was across the center line of Grant street in the intersection and on the right, or north, side of the middle line of Forest Drive. The accident occurred at

approximately 6:15 A.M. and plaintiff did not regain consciousness until approximately eight and one-half hours thereafter. He remained in the hospital for twelve days, and serious permanent injuries were sustained by him as a result of the collision. There was no dispute concerning the sequence in the operation of the traffic control signals at the intersections involved in the case.

The specification of points upon which plaintiff in error relies chiefly for reversal of the judgment is that the court erred in finding that defendant ran through a red light and that plaintiff was proceeding through the intersection on the green light. It is asserted that the overwhelming weight of the oral testimony and the undisputed physical facts establish exactly the contrary and therefore plaintiff was guilty of contributory negligency which precluded recovery.

In order to make clear the evidence upon which this argument is based, we set forth the substance of plaintiff's testimony concerning the accident. He testified that he drove his vehicle north on Logan street from Ellsworth street to Forest Drive, a distance of several blocks. Logan street is a one-way street for northbound traffic and runs parallel to Grant street one block to the east. The intersection of Logan street and Forest Drive is controlled by traffic signals similar to those at the intersection of Grant street and Forest Drive. Upon arriving at the intersection of Logan street and Forest Drive he brought his vehicle to a stop and waited for the light to turn green for northbound traffic across said intersection. When this light turned green he made a left turn on Forest Drive and proceeded in a northwesterly direction. "Q. And you were going about fifteen miles an hour, as you call it, down Forest Drive? A. Yes, sir, down about half way. Q. I believe you testified when you were about half way down you looked up and saw both of these lights green at the intersection of Grant, is that right? A. Yes, sir, they were green."

\*     \*     \*

"Q. And that is where you were when you saw these two green lights down on Grant? A. Yes, sir, I was about in the middle of the block. Q. Then you slowed down to about seven miles an hour? A. About seven miles an hour, yes, sir. Q. And did you watch both of those lights? A. Yes, sir, they were still green."

The above quoted testimony was given upon cross-examination. His statement upon direct examination was that the lights were green as he entered the intersection. He further said: "Well, I went down Ellsworth to Logan Street and then down Logan to Forest Drive, and then I hit Forest Drive. I was going down Forest Drive here and I got down about half a block here; I looked up and both lights were green, this light and this one here, and then I looked through the trees there and across the bridge I could see some cars approaching the bridge, which was coming down this way, and after I got up about ten yards I seen a car parked waiting for the light, about here; and then in the meantime, back here about fifty yards, I slowed up to about seven miles an hour and then I went into the intersection and something struck me suddenly, hit me on the the right leg and the rear rump and knocked me out and I never knew any more."

One other witness testified to the effect that at the time of the collision plaintiff had the green light, but the evidence of this witness was highly incredible and the trial court in its findings eliminated from consideration the testimony of that witness. Relatives of the plaintiff testified that at the Denver General Hospital, a few days after the accident, defendant appeared to offer blood for a transfusion to plaintiff and that he then stated, in explaining how the accident happened, that he had run through a red light. The making of any such statement was vigorously denied by defendant. He stated at the scene of the accident, to the officers who arrived almost immediately, that, "The light was green and I started

across and when the bicycle came to my left and ran the red light, I hit it."

The findings of the trial court include the following statement: "In this case, the evidence is in hopeless conflict, but the court has followed it very carefully, and even disregarding the testimony of Mrs. Finnicum and disregarding the testimony of the admissions made by the defendant, the court, nevertheless, feels that the defendant was guilty of negligence in three particulars, * * *." The court found that defendant was guilty of driving faster than the speed limit of twenty-five miles per hour; that he ran through a red light; and that he was guilty of reckless driving.

On behalf of defendant three eye-witnesses to the collision were called. Two of them, Mr. Rupp and Mr. Patterson, were riding in a car following that which defendant was driving. They were employees of the Gates Rubber Company and were on their way to work. They testified positively that defendant's automobile entered the intersection of Grant street and Forest Drive with the green light and that the light did not change at any time prior to the accident. Witness Eichman testified that he was driving his car south on Grant street, approximately twenty to thirty feet behind defendant's car. He, too, testified positively that defendant's car entered the intersection with the green light. These witnesses were not acquainted with either of the parties to the action. Mr. Bishop, an attorney who investigated the accident shortly after it happened, testified that he called upon plaintiff at the hospital three or four days after the accident and that plaintiff stated that he did not know how fast he was going or what color the light was when he entered the intersection. Expert medical testimony from Dr. Robert G. Packard, Dr. Harry C. Hughes and Dr. Samuel P. Newman was to the effect that it would be reasonable to suppose that plaintiff suffered an obliteration of memory for about thirty seconds prior to the accident, and that where an injured person is knocked

unconscious for a substantial period of time such a condition may reasonably be expected.

Witness Rudden, the city engineer who had charge of designing, building and time the electric traffic controls, explained in minute detail the sequence of the traffic lights at the intersections involved. From his testimony it is clear that a person intending to travel on Forest Drive from Logan to Grant streets, who starts from Logan when the light turns green for northbound traffic at Logan and Forest Drive, would have thirty-nine seconds of red light burning for northwesterly traffic at the intersection of Forest Drive and Grant street. It is undisputed that at the instant the green light came on for northbound traffic on Logan street across Forest Drive, the light turned red at Forest Drive and Grant street for northwesternly traffic on Forest Drive. This undisputed testimony definitely established that plaintiff, going north on Logan street and continuing his journey on Forest Drive when the light on Logan street turned from red to green, could not possibly have crossed the intersection of Forest Drive and Grant street within thirty-nine seconds without running through a red light. Simple mathematics will demonstrate conclusively that at fifteen miles per hour one would travel twenty-two feet per second. Plaintiff testified that when he reached a point half way down the block, a distance of approximately 200 feet, the traffic light turned green at Forest Drive and Grant street. Simple mathematics will demonstrate conclusively that he reached this halfway point, if he travelled as he claimed at the rate of fifteen miles per hour, in nine or ten seconds. There still would be a full thirty seconds of red light, and even if he travelled the last 200 feet at only seven miles per hour he could not possibly consume the full thirty seconds in travelling the remaining 200 feet. If, as plaintiff claims, the first half of the block was travelled at the rate of fifteen miles per hour and the second half of the block at the rate of seven miles per hour, the average would be about eleven miles

per hour for the entire block. Simple mathematics will demonstrate that the entire distance from Logan to Grant street—407 feet—would be covered in approximately twenty-five seconds of time, leaving approximately fourteen additional seconds of time during which the red light would be against traffic in the direction traveled by plaintiff.

The crux of the contention of defendant is that the foregoing admitted facts demonstrate conclusively that plaintiff entered the intersection against the red light and that this conclusion is inescapable, notwithstanding the statement of plaintiff that the lights were green.

Question to be Determined.

■ *Do the undisputed physical facts in the instant case, when subjected to the application of simple mathematics, demonstrate beyond question that the findings of the court are based upon assertions which cannot possibly be true, by reason of which, as a matter of law, the judgment should be reversed?*

The question is answered in the affirmative. It is true, as a general rule, that a party to an action is entitled to have his case submitted to the jury, or the court, as the trier of the facts, upon his own interested testimony although contradicted by disinterested witnesses, and usually a judgment rendered under such circumstances will not be nullified by an appellate court. However, where, as in the instant case, the testimony of a party not only is opposed to that of three disinterested eye-witnesses, but is shown to be untrue by the uncontrovertible physical facts, a different situation is presented.

■ "A court cannot accept as true that which the indisputable evidence demonstrates is false." *Lessig v. Reading Transit & Light Co.*, 270 Pa. 299, 113 Atl. 381. The applicable rule was quoted with approval in that case from volume 1, Elliott on Evidence, page 38, section 39, as follows: "Even though it [an appellate court] may not be authorized to weigh evidence and pass upon the facts, it may, and should, so use its juricial knowledge

as to bring about justice. Thus, there are often undisputed physical facts clearly shown in evidence, and by applying to them a well-known law of nature, of mathematics, or the like, it is demonstrated beyond controversy that the verdict or finding is based upon what is untrue and cannot be true. In such case, it is very generally held that the appellate court should take judicial notice of the law of nature or mathematics or quality of matter, or whatever it may be that rules the case and apply it as a trial court should have done."

From the nature of the question under discussion individual cases are of but limited value as precedents since no two cases present identical physical facts leading to the same conclusion. Every case must rest upon its own factual basis. It is firmly established in the law, however, that appellate courts, upon review of a judgment, will not hesitate to take judicial notice of the unquestioned laws of mathematics, and where the trial court has failed to recognize them and has entered judgment supported by some evidence which is "so far as variance with the undisputed physical facts as to demonstrate that the evidence is false and the verdict unjust," the judgment will be set aside. *Sheppard v. Wichita Ice & Cold Storage Co.*, 82 Kan. 509, 108 Pac. 819.

We have recognized the applicable rule and have reversed judgments because of the force thereof in the following cases: *Westerkamp v. Chicago B. & Q. Ry. Co.*, 41 Colo. 290, 92 Pac. 687; *McLennon v. Whitney-Steen Co.*, 63 Colo. 568, 167 Pac. 771; *Brice v. Miller*, 121 Colo. 552, 218 P. (2d) 746. We quote from the Westerkamp case as follows: "Where a physical situation renders the right of a matter clearly beyond all reasonabe controversy, there is no conflict to be solved by a jury, because no just verdict can be rendered contrary to all reasonable probabilities. In such circumstances the testimony of a witness to that which is physically impossible must be rejected, and a court will treat as unsaid by a witness that which, in the very nature of things, could not be as

said. A trial court should not submit to a jury the determination of a fact about which, from all the testimony, there can be no dispute."

We are satisfied that by a simple mathematical calculation the statement of plaintiff that he went through the intersection of Forest Drive and Grant street on a green light is shown conclusively to be false. The findings and judgment of the trial court are without support in the evidence.

Accordingly the judgment is reversed and cause remanded with directions to dismiss the action.

Mr. Justice Stone dissents.

Mr. Justice Clark and Mr. Justice Knauss not participating.