**Guy Y. LEGOUFFE, Petitioner,**

v.

**PRESTIGE HOMES, INC., Employer, Aetna Insurance Company, Insuror, and the Industrial Commission of Colorado, Respondents.**

No. 80CA0664.

Colorado Court of Appeals, Div. I.

June 11, 1981.

Rehearing Denied July 16, 1981.

Certiorari Granted Oct. 5, 1981.

Morrato, Gueck & Colantono, P. C., James J. Morrato, Englewood, for petitioner.

Tilly & Graves, Ronald O. Sylling, David D. Schlachter, Denver, for respondents Prestige Homes and Aetna Ins. Co.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, David L. Lavinder, Asst. Attys. Gen., Denver, for respondent Industrial Com'n of the State of Colo.

STERNBERG, Judge.

In this workmen's compensation action, claimant, Guy Y. Legouffe, seeks review of a final order of the Industrial Commission denying him medical and disability benefits. He contends that the referee erred in failing to find a causal relationship between the accident and his injury, in applying the "unusual exertion" statute, § 8–41–108(2.5), C.R.S.1973 (1980 Cum.Supp.), and in using the wrong standard of proof. We reverse.

On a rainy day in September 1976, Legouffe was working as the construction superintendent of Prestige Homes, Inc. He was 33 years old and, to the best of his knowledge, in good health. In the course of performing his work, Legouffe connected a compressor requiring an electrical supply of 220 volts with the construction supply outlet, then plugged the compressor supply line into the supply cord. Legouffe, who had been standing in the mud, received an elec-

trical shock: his arms were thrust into the air, he fell to his knees, and his body was thrown back some 4 or 5 feet.

Symptoms of a heart attack, including pain in the arms and chest and difficulty in breathing, were noted immediately. Legouffe was taken to the hospital where a diagnosis of an acute myocardial infarction was made. Subsequent tests revealed that he had an undiagnosed preexisting coronary heart disease and a ventricular aneurysm.

On October 4, 1976, Prestige Homes filed an accident report indicating that claimant had sustained an electrical shock and, minutes thereafter, several heart attack symptoms were evident. Legouffe returned to work in December 1976, and, contrary to medical advice, worked intermittently thereafter. In March 1977, the insurer filed a denial of liability and requested reimbursement for payments made pursuant to a previously filed general admission of liability.

At the hearing, the treating physician, a cardiologist, explained the preexisting heart disease and testified without qualification that the electrical shock precipitated the infarction to which the underlying, undiagnosed, preexisting heart disease predisposed Legouffe. He stated, however, that an after-the-fact determination of the precise manner in which the shock precipitated the attack would be conjectural. He also testified that the absence of burns on the body is irrelevant in determining the existence or severity of electrical shock.

Despite the history and the treating physician's testimony, the employer's medical expert testified that he did not believe claimant had suffered an electrical shock, and that a shock might cause a heart attack through arrythmia, clotting, or direct muscle damage, but that a shock of sufficient severity to do so would also cause burns on the body. He considered a 220 volt shock to be minor inasmuch as 750 volts is used to reverse ventricular fibrillation.

Crediting the testimony of the employer's expert witness, the referee found that claimant sustained an electrical shock but that it was not the proximate cause of the myocardial infarction. He also found that the infarction was not caused by unusual exertion. The Commission adopted and affirmed the referee's decision.

## I.

■ The claimant and employer agree that where a heart attack appears to be trauma-induced, it is sufficient to prove it was proximately caused by an accident under § 8–52–102(1)(c), C.R.S.1973 (1980 Cum. Supp.), rather than by unusual exertion as required by § 8–41–108(2.5), C.R.S.1973 (1980 Cum.Supp.). Statements in the referee's opinion suggest that he considered proof of over-exertion might be required. To the extent that he took such considerations into account, it was error.

■ Where, as here, there is a claim of aggravation of a preexisting heart condition by trauma, claimant must show his preexisting heart disease was aggravated by trauma, and in such case over-exertion is not an element. *Marotte v. State Compensation Insurance Fund*, 145 Colo. 99, 357 P.2d 915 (1960); *Industrial Commission v. Havens*, 136 Colo. 111, 314 P.2d 698 (1957).

Because there are certain indications of confusion as to the proper standard of proof in the referee's findings which may have led to difficulties we perceive to exist in his conclusions, we also address the issue of proper standard of proof.

■ The causal connection between the shock and the infarction did not have to be established with reasonable medical certainty; instead, the claimant was required only to produce evidence of causation based on reasonable probability. In *Ringsby Truck Lines, Inc. v. Industrial Commission*, 30 Colo.App. 224, 491 P.2d 106 (1971), it was stated in this regard:

"The sole issue in dispute is whether there is any causal connection between the accident and the loss of vision in claimant's right eye. The employer asserts the causal connection must be established with reasonable *medical* probability. This is the standard upon which a medical expert must base his opinion but it is not the standard on which the commission must make its determination. The evi-

dence *must establish the causal connection with reasonable probability*, but it *need not establish it with reasonable medical certainty.*" (emphasis added)

## II.

■ Findings of the Commission based on conflicting evidence are binding on review if supported by substantial evidence. *American Metals Climax, Inc. v. Cisneros*, 195 Colo. 163, 576 P.2d 553 (1978). But, when an accurate statement of a valid proposition of physical science applied to undisputed facts shows such findings to be erroneous, an appellate court may not permit the conclusion based thereon to stand. *See Winterberg v. Thomas*, 126 Colo. 60, 246 P.2d 1058 (1952).

■ A scientific proposition accepted as valid in the appropriate scientific community may be judicially noticed, *Bieser v. Stoddard*, 73 Colo. 554, 216 P. 707 (1923), by an appellate court, acting on its own initiative, *Winterberg v. Thomas, supra; McCormick on Evidence* § 330 (E. McCleary 2d ed. 1972). Colorado Rule of Evidence 201 is a codification of existing case law on what may be judicially noticed. *Larsen v. Archdiocese of Denver*, Colo.App., 631 P.2d 1163 (1981).

With respect to the employer's expert witness's testimony, we take notice that voltage is a measure of electrical pressure or potential. It is the flow of current that determines whether there will be burning of skin at the site of an electrical shock. *Gradwohl's Legal Medicine*, pp. 384–385 (F.Camp 2d ed.) states without reservation, in direct contradiction to this expert's testimony, that:

"[A]ll electrical supplies are potentially dangerous, even with voltages as low as 50 ....

"The site of entry of an electrical current on a body may lack any visible mark ...."

*See also* Dalziel, *Electric Shock Hazard*, 9 *Institute of Electrical & Electronic Engineers Spectrum* 41 (1972). And, the following statement appears in *T. Gonzales, Legal Medicine Pathology & Toxicology*, p. 535 (2d ed. 1954):

"[I]f the resistence is reduced as it would be *if the skin were moist* or covered with sweat, then *even a current of low voltage would have sufficient amperage to produce a severe and even fatal shock without necessarily producing a skin burn*, especially if the contact is only for a brief interval." (emphasis added)

Accordingly, we take notice of the fact that a shock caused by contact with a 220 volt power line can cause serious injury without leaving a visible burn mark.

■ Here, it is clear from the record that the employer's expert's opinion that no shock occurred was predicated on the erroneous assumption that, in order for there to be a severe shock, there must be burns at the site of entry of the electrical current. Because this testimony ignores or is contrary to principles of physical science, it cannot serve as a basis for the referee's conclusion that there was no causal connection between the shock and heart attack. *Winterberg v. Thomas, supra.*

The order, therefore, is set aside and the cause remanded for further proceedings to determine the benefits to which the claimant is entitled.

COYTE and BERMAN, JJ., concur.