Randolph L. QUINTANA,
Plaintiff–Appellant,

v.

CITY OF WESTMINSTER and Timothy Torres, Defendants–Appellees.

No. 01CA0999.

Colorado Court of Appeals,
Div. II.

April 25, 2002.

Certiorari Denied Oct. 21, 2002.

Fasing Law Firm, P.C., Gregory J. Fasing, Denver, Colorado, for Plaintiff–Appellant.

Martin R. McCullough, City Attorney, Jeffrey M. Betz, Deputy City Attorney, Westminster, Colorado; Senter Goldfarb & Rice, L.L.C., Thomas S. Rice, Eric M. Ziporin, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge JONES.

Plaintiff, Randolph L. Quintana, appeals the dismissal of his complaint alleging negligence by defendants, the City of Westminster and police officer Timothy Torres, on grounds of lack of subject matter jurisdiction under the Colorado Governmental Immunity

**1196**

Act (GIA), § 24–10–106, and § 42–4–108, C.R.S.2001. We affirm.

Plaintiff sued the City and Torres after plaintiff was seriously injured in a collision with a suspect's speeding vehicle, which Torres was pursuing in his police cruiser. Defendants moved to dismiss for lack of subject matter jurisdiction under the GIA. After a hearing, the trial court granted defendants' motion to dismiss.

In *Quintana v. City of Westminster,* 8 P.3d 527 (Colo.App.2000)(*Quintana I*), a panel of this court vacated the trial court's judgment and remanded the case, directing the trial court to determine, pursuant to § 42–4–108(2)(c), C.R.S.2001, whether Torres's conduct endangered life or property while exceeding the lawful speed limit.

Upon remand, and on additional briefs but without a further hearing, the trial court found that "although Torres did not follow certain [of the City's pursuit] procedures ... [and] exceeded the posted legal speed limits, that act of speeding did not endanger life or property." This second appeal followed.

I.

■ Plaintiff first contends that the trial court erred by failing to apply the proper legal standard to determine whether Torres, as he pursued the suspect, endangered life or property while exceeding the speed limit. We perceive no error.

■ Pursuant to the GIA, a public entity and its employees are immune from tort liability unless, under the circumstances, the claim is within certain statutorily specified exceptions. *Bertrand v. Board of County Comm'rs,* 872 P.2d 223 (Colo.1994). Issues of governmental immunity are determined under C.R.C.P. 12(b)(1) concerning motions to dismiss for lack of subject matter jurisdiction. *Fogg v. Macaluso,* 892 P.2d 271 (Colo. 1995).

■■ Decisions of a trial court regarding factual disputes are accorded great deference and, therefore, a reviewing court applies the clear error standard of review. *Walton v. State,* 968 P.2d 636 (Colo.1998). The plaintiff bears the burden of proving subject matter

jurisdiction, and the trial court's findings of fact supporting a determination under the GIA will not be reversed unless clearly erroneous. *Trinity Broad. of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo. 1993). A finding is clearly erroneous, and, therefore, lacking support of competent evidence, when, "although there [may be] evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948); *see St. James v. People,* 948 P.2d 1028 (Colo.1997).

■ However, while the exceptions to the GIA waivers of immunity are to be construed narrowly, the waiver provisions themselves are to be construed deferentially in favor of injured persons. *See Corsentino v. Cordova,* 4 P.3d 1082 (Colo.2000); *State v. Nieto,* 993 P.2d 493 (Colo.2000); *Walton v. State, supra.*

A.

Plaintiff first argues that the trial court erred on remand by not applying the proper standard for construing the GIA because it did not refer to *Walton v. State, supra,* in its order. We disagree.

In *Walton,* the supreme court determined that the GIA's waiver provisions are to be construed deferentially in favor of injured persons. As plaintiff points out, *Walton* was decided after the trial court's original findings were entered here. However, following the *Walton* decision, the supreme court in *Corsentino v. Cordova, supra,* established the legal standard by which courts must consider governmental immunity cases involving emergency vehicles. In doing so, the supreme court reiterated its holding in *Walton* concerning interpretation in favor of injured persons.

Here, upon remand, the trial court applied the standard set forth in *Corsentino v. Cordova, supra.* We conclude that the trial court was aware of its obligation narrowly to construe immunity and to construe the waiver provisions of the GIA broadly. Therefore, we perceive no error.

## B.

Plaintiff specifically contends that the trial court erred by not applying the standards of *Corsentino v. Cordova, supra,* for determining endangerment. We disagree.

■ In *Corsentino,* the supreme court first established an objective standard from the perspective of a reasonable emergency vehicle operator for determining whether an emergency vehicle operator was responding to an emergency call under § 42–4–108(2), C.R.S.2001. "Under this standard, courts must decide whether the emergency vehicle operator reasonably believed that she was responding to an emergency based on information she knew or should have known." *Corsentino v. Cordova, supra,* 4 P.3d at 1088. Noting the competing interests of the injured party and the public concerning such inquiry, the supreme court then stated, "[T]he standard for determining whether an emergency exists should not be so deferential as to prevent legitimate recovery. Conversely, it should give enough deference to emergency vehicle operators' decisions so that there is no chilling effect on their responses to emergencies." *Corsentino v. Cordova, supra,* 4 P.3d at 1088.

■ Additionally, the supreme court in *Corsentino* determined that, in resolving these issues, courts should consider whether the emergency department has a policy concerning response to emergencies and that "[i]t is reasonable to assume that an emergency vehicle operator is or should be aware of her department's policy." *Corsentino v. Cordova, supra,* 4 P.3d at 1089. Response by an emergency vehicle operator that is in line with the department's policy raises "a strong likelihood that her response is reasonable under the circumstances," but "if the emergency vehicle operator proceeds against the established policy ..., there is a strong likelihood that her response is not reasonable." *Corsentino v. Cordova, supra,* 4 P.3d at 1089.

■ The courts must then determine whether immunity is waived under the circumstances. In this regard, the supreme court stated that "the pertinent question is whether the emergency vehicle operator's speed created an unreasonable risk of injury or damage to life or property." *Corsentino v. Cordova, supra,* 4 P.3d at 1093. In contemplating this question, the courts "must not consider the accident or actual damage" resulting from the speeding, nor should they consider "whether the emergency vehicle operator was responding to an actual emergency"; instead, "courts should limit their inquiry to the relationship between the conduct of the emergency operator prior to the accident and the circumstances surrounding the conduct," including "the legal speed limit in the area, the speed at which the operator was driving, the conditions of the road, and the type of area in which she was driving." *Corsentino v. Cordova, supra,* 4 P.3d at 1093. Thus, "the officer's driving must be evaluated in the context of all relevant circumstances." *Quintana I, supra,* 8 P.3d at 530.

Here, the trial court considered each factor set out in *Corsentino,* listing those considerations and stating that the list was not exclusive. The trial court properly determined that, from an objective standpoint, Torres had a reasonable belief that he was, and ought to be, responding to an emergency. The trial court also properly considered Torres's failure to follow certain pursuit policies of his department. Although he failed to apprise the department of his speed, the record reflects that he was in constant contact with his dispatcher and other officers in the area of the pursuit; he advised that he was in pursuit of an automobile; he described the vehicle, its location, and the direction in which it was traveling; and he described the appearance and the clothes of one of the vehicle's occupants, who fled from the accident scene, and gave the direction of the suspect's flight. All of these actions were taken in accordance with the department's pursuit policies, as the trial court found.

Thus, we agree with the trial court's implied finding that Torres's failure to follow certain procedures did not, under the circumstances, render his response unreasonable. See *Corsentino v. Cordova, supra.*

Upon an examination of the entirety of the record, we conclude that the trial court appropriately applied the rubric of *Corsentino*

and that its finding that Torres did not endanger life or property is well supported by the record.

## C.

Plaintiff next contends that the trial court erred in not adhering to the *Quintana I* remand instructions and, specifically, in not following *Zapp v. Kukuris,* 847 P.2d 150 (Colo.App.1992). We disagree.

The law of the case established by an appellate court must be followed on remand in subsequent proceedings before a trial court. The doctrine of law of the case applies "not only to the conclusive effect of appellate rulings on remand, but also to the binding force of trial court rulings during later trial court proceedings." *Kuhn v. Dep't of Revenue,* 897 P.2d 792, 795 n. 5 (Colo.1995)(quoting *People v. Roybal,* 672 P.2d 1003, 1005 n. 5 (Colo.1983)).

In *Quintana I,* the division of this court determined that the *Zapp v. Kukuris* standard regarding whether the driver operated with reckless disregard of others was not applicable under the supreme court's decision in *Fogg v. Macaluso, supra.*

Accordingly, the trial court applied the appropriate legal standard in determining whether Torres endangered life or property while exceeding the speed limit.

## II.

Plaintiff next contends that the trial court erred in finding and concluding that Torres did not endanger life or property in exceeding the speed limit. We disagree.

## A.

Plaintiff first argues that the trial court erred in failing to mention in its order the testimony of any eyewitness, including eyewitnesses whose statements were attached to police reports. We disagree.

We review a trial court's evidentiary decisions for abuse of discretion. *Quintana I, supra* (citing *Bonser v. Shainholtz,* 983 P.2d 162 (Colo.App.1999), *rev'd on other grounds,* 3 P.3d 422 (Colo.2000)). The

trier of fact may reject uncontroverted expert or lay testimony as unreliable. *See Hock v. New York Life Ins. Co.,* 876 P.2d 1242, 1253 (Colo.1994); *West Denver Feed Co. v. Ireland,* 38 Colo.App. 64, 551 P.2d 1091 (1976); *Thiele v. State,* 30 Colo.App. 491, 495 P.2d 558 (1972). The reviewing court will presume that the trial court disregarded incompetent evidence. *See In re Marriage of Peterson,* 40 Colo.App. 115, 572 P.2d 849 (1977). A trial court's findings of fact will not be disturbed on appeal if they are supported by competent evidence in the record. *St. James v. People supra.*

### 1.

In *Quintana I,* the division affirmed the trial court's exclusion of lay opinion testimony from one eyewitness because it lacked the proper foundation. In addition, regarding the testimony of the traffic control supervisor in charge of the road construction project, the division stated that "[t]he record indicates that the eyewitness who was not initially allowed to opine whether the officer was 'reckless,' in fact, ultimately testified concerning that issue." *Quintana I, supra,* 8 P.3d at 530. Therefore, we do not reconsider the validity of these witnesses' testimony here. *See Kuhn v. Dep't of Revenue, supra.*

### 2.

Here, plaintiff refers to statements made to police by individuals who were not called to testify under oath and were not subject to cross-examination. Plaintiff submitted the statements to prove the matter each witness asserted, namely, that during the chase, Torres greatly exceeded the speed limit. The trial court properly disregarded each of these statements as incompetent evidence because each is hearsay, not within an exception to the rule. *See* CRE 801. Additionally, even if such statements were admissible, the court could exclude them under CRE 403.

### 3.

The record reveals that the trial court, pursuant to CRE 703, received the testimony of plaintiff's expert concerning the speed of Torres's vehicle, based upon the

eyewitness reports. Under CRE 703, an expert may base an opinion upon facts and data made known to the expert before or during the hearing, even if those facts and data are not admissible into evidence.

In *Quintana I, supra,* 8 P.3d at 531, the division stated: "[O]n remand, the trial court *may* consider the expert's testimony as it relates to the officer's endangerment of life or property" (emphasis added). In addition, the division indicated that the trial court might choose to conduct additional pretrial evidentiary hearings to consider the expert's testimony, but this was not compulsory.

We cannot conclude that, merely because the court did not specifically refer to the expert's testimony in its order, the court ignored that evidence. Indeed, the trial court found that the pursuing officer violated certain department procedures, a point made by the expert.

In sum, competent evidence in the record supports the findings that Torres drove his vehicle to avoid colliding with others; he slowed his vehicle before entering the construction zone where the collision occurred between the suspect vehicle and plaintiff; he maintained visual contact with the suspect vehicle during the pursuit; and although he violated some of the City's police pursuit procedures during the chase, these violations did not affect his operation of the vehicle. As we concluded above, these findings and the entire record support the trial court's ultimate conclusion that, while speeding, the officer "did not endanger life or property."

## B.

Plaintiff also argues that the trial court erred in failing to take judicial notice of a mathematical calculation offered to determine the speed of Torres's vehicle. We disagree.

Facts subject to the judicial notice rule are those "not subject to reasonable dispute" and must be either "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." CRE 201(b).

Traditionally, the rule has been used cautiously because its purpose is to bypass the usual factfinding process. Thus, such notice should be taken only when the facts are of such common knowledge that they cannot reasonably be disputed. *Prestige Homes, Inc. v. Legouffe,* 658 P.2d 850 (Colo.1983). For example, unquestioned laws of mathematics are judicially noticeable. *Winterberg v. Thomas,* 126 Colo. 60, 246 P.2d 1058 (1952). However, conclusions reached by application of mathematical principles cannot be judicially noticed unless such conclusions are irrefutable. *See Anderson v. Lett,* 150 Colo. 478, 374 P.2d 355 (1962).

Here, plaintiff reached a conclusion concerning Torres's speed based upon a calculation of the speed of the suspect vehicle at the moment of impact combined with the estimated distance between Torres's cruiser and the suspect vehicle. Defendants disputed this conclusion.

Thus, we conclude that the trial court did not abuse its discretion in declining to take judicial notice of this mathematical calculation because plaintiff did not show that the equation and its application lead to an irrefutable result. *See* CRE 201(c).

Accordingly, we conclude that the trial court applied the proper legal standard, did not abuse its discretion in determining matters of evidence, and did not err in weighing the evidence to arrive at its findings of fact and conclusions of law.

The judgment is affirmed.

Judge PLANK concurs.

Judge WEBB dissents.

Judge WEBB dissenting.

With respect, and mindful of the great deference accorded the trial court's factual findings, I dissent. In my view, both the trial court and the majority have failed to address plaintiff's singular theory: that Torres "endangered life or property while exceeding the lawful speed limit" within the meaning of § 42-4-108(2)(c), C.R.S.2001, when, according to the complaint, "Officer Torres chased [the suspect's vehicle] eastbound on West 72nd Avenue into a congested

construction zone at rush hour, during heavy traffic, when [the suspect's vehicle] crossed into the westbound lanes of West 72nd Avenue and smashed head-on into [plaintiff's car]."

The facts relevant to plaintiff's theory can be found in Torres's testimony. Torres began his pursuit in the vicinity of 71st Place and Sheridan Boulevard. He turned on his lights and, seconds later, his siren. He then followed with lights and siren during the entire episode.

The suspect vehicle turned from Sheridan Boulevard east onto West 72nd Avenue. Torres continued the pursuit for approximately sixteen blocks east to the intersection of West 72nd Avenue and Lowell Boulevard. Torres estimated his speed along West 72nd Avenue at fifty to sixty miles per hour, despite the thirty-five miles-per-hour speed limit.

Torres knew that one block beyond Lowell Boulevard, a construction zone narrowed West 72nd Avenue from four lanes to two lanes. He acknowledged that the suspect vehicle "was fleeing from [his] lights and siren patrol car." During the pursuit down West 72nd Avenue, the suspect vehicle "never made any indication [it] was going to make any kind of turn."

At the Lowell Boulevard intersection, Torres slowed and then stopped briefly, but still did not break off his pursuit. At that point he was about 150 feet behind the suspect vehicle, although previously he had been following only three car lengths behind. One block further east, the construction zone began. Three blocks into the construction zone, the suspect vehicle, traveling at an accident reconstruction expert's estimate of sixty-seven miles per hour, crossed into the single oncoming traffic lane and struck plaintiff's car.

The trial court's factual findings address how Torres conducted the "high-speed pursuit," not *why* he continued the chase into the construction zone, which I see as a key factor in the necessary calculus of risk. The majority correctly concludes that the record supports those findings. However, none of those findings speaks to the question of endangerment arising solely from Torres's (or his supervisor's) decision to chase the suspect vehicle into the narrowed construction zone.

The majority also notes that the trial court's findings support its ultimate legal conclusion that Torres did not "endanger life or property." I agree that all the factual findings about the police chase bear some relevance to the endangerment inquiry, but the findings simply do not address plaintiff's specific theory of endangerment.

Moreover, several of the trial court's factual findings indicate that Torres's continued pursuit could have endangered oncoming traffic because the two-lane construction zone made a head-on collision more likely if the driver of the suspect vehicle lost control at that point. For example, "Torres exceeded the posted speed limits while on 72nd Avenue." Although "Torres reduced his speed prior to entering the construction zone," at the intersection of 72nd Avenue and Lowell Boulevard "the suspect vehicle was [then] approximately 150 feet ahead of the Torres vehicle." With the start of the construction zone now only one block ahead, the distance of 150 feet behind the suspect vehicle shows that Torres was still in hot pursuit.

In the prior appeal, a panel of this court remanded "because the trial court did not make any finding resolving whether the officer's actions endangered life or property" and noted that "the officer's driving must be evaluated in the context of *all* relevant circumstances." *Quintana v. City of Westminster*, 8 P.3d 527, 530 (Colo.App.2000)(emphasis supplied). Under *Corsentino v. Cordova*, 4 P.3d 1082, 1093 (Colo.2000), "courts should limit their inquiry to the relationship between the conduct of the emergency operator prior to the accident and the circumstances surrounding the conduct." Here, the trial court's findings fail to address what I see as the most significant surrounding circumstance: the particular hazard of the suspect vehicle being chased into the narrowed construction zone.

*Corsentino* also noted with approval the trial court's careful analysis of the accident location, including "line-of-sight problems caused by the overgrowth of trees and bushes on the median at the intersection"

where the accident occurred. 4 P.3d at 1093. Here, a similar analysis could have, and in my view should have, been performed of the construction zone. The trial court's omission cannot be excused by its sole focus on operation of Torres's vehicle, because liability under the GIA extends to collisions involving the vehicle being chased. *See Zapp v. Kukuris,* 847 P.2d 150 (Colo.App.1992).

This early stage of the proceeding presents only the threshold question of whether endangerment creates jurisdiction under the GIA. The emergency vehicle exception to the motor vehicle waiver of immunity should be narrowly construed for the benefit of injured persons. *Corsentino v. Cordova, supra.* Whether Torres drove his vehicle recklessly or appropriately during the lengthy high-speed chase, the necessity of which the trial court assumes but does not address, presents a different question.

Colorado law on appellate review of trial court factual findings includes no civil case concerning trial court findings that are both supported by the record and consistent with the ultimate legal conclusion, but which nevertheless fail to address a plaintiff's particular theory. *Cf. St. James v. People,* 948 P.2d 1028, 1032 (Colo.1997)(remanding: "Because no determination was made by the trial court, the appellate function is hindered. The clearly erroneous standard of review cannot be applied....").

With reluctance to protract litigation further that arose from an accident on July 17, 1996, I would again remand the case, this time with express direction that the trial court make specific findings on whether the mere fact of continuing to pursue the suspect vehicle for sixteen blocks, until its entry into the construction zone became inevitable, "endangered life or property."