25CA2431 Peo in Interest of CM 06-25-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2431
Alamosa County District Court No. 24JV30017
Honorable Amanda C. Hopkins, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of C.M., a Child,

and Concerning M.M.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE BROWN
Harris and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 25, 2026

---

Jason T. Kelly, County Attorney, Alamosa, Colorado, for Appellee

Josie Burt, Guardian Ad Litem

Beth Padilla, Office of Respondent Parents' Counsel, Durango, Colorado, for Appellant

¶ 1     In this dependency or neglect proceeding, M.M. (mother) appeals the judgment terminating her parent-child legal relationship with C.M. (the child).  We affirm.

## I.     Background

¶ 2     In March 2024, the Alamosa County Department of Human Services became involved with the family following reports of neglect and possible sexual abuse of the then-three-year-old child, as well as concerns about mother's substance abuse and lack of protective capacity.  Soon after, the juvenile court granted the Department temporary legal custody of the child, and the Department filed a petition in dependency or neglect.  The court adjudicated the child dependent or neglected and adopted a treatment plan for mother.

¶ 3     The Department later moved to terminate mother's parental rights.  Eighteen months after the Department filed the petition, and following a two-day evidentiary hearing, the juvenile court granted the motion and terminated mother's legal relationship with the child.

## II.     Termination Criteria and Standard of Review

¶ 4     The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated

dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 5 Whether the juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15; *see also People in Interest of A.S.L.*, 2022 COA 146, ¶ 8 (applying the same standard of review to whether a department of human services satisfied its obligation to make reasonable efforts). We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. The credibility of witnesses; sufficiency, probative value, and weight of the evidence; and the inferences and conclusions drawn from the evidence are within the discretion of the juvenile court. *A.M.*, ¶ 15.

### III. Judicial Notice

¶ 6 Mother contends that the juvenile court erred by taking judicial notice of the prior dependency or neglect case involving mother, the child, and the child's father, M.C. (father). Specifically,

2

mother argues that the juvenile court erred by taking notice of pleadings that contained allegations "inherently subject to reasonable dispute" and violated her right to due process by depriving her of notice of the allegations against her. We conclude that this contention is not preserved.

### A. Applicable Law and Standard of Review

¶ 7 A court may take judicial notice of an adjudicative fact that is not subject to reasonable dispute and is either (1) generally known within the territorial jurisdiction of the court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. CRE 201(b). A court may also take judicial notice of its own records. *In Interest of C.A.B.L.*, 221 P.3d 433, 442 (Colo. App. 2009). But a court may not take judicial notice of facts on the issue the parties are litigating. *Id.* Judicial notice must be exercised "cautiously because its purpose is to bypass the usual factfinding process." *Quintana v. City of Westminster,* 56 P.3d 1193, 1199 (Colo. App. 2002).

¶ 8 We review the juvenile court's decision to take judicial notice for an abuse of discretion. *Id.* A juvenile court abuses its discretion when its decision is manifestly arbitrary, unreasonable,

3

or unfair, or when it misapplies or misconstrues the law. *People in Interest of E.B.*, 2022 CO 55, ¶ 14.

## B. Analysis

¶ 9  At the termination hearing, the Department asked the juvenile court to take judicial notice of the pleadings and orders in the prior dependency or neglect proceeding, which resulted in termination of father's parental rights and the child's return to mother's care. Mother objected, arguing that "it would be prejudicial to [mother] to show or make some sort of propensity argument," and requested that the court only "consider the facts in this case specifically." The juvenile court took judicial notice of "the pleadings and filings in the previous matter" over mother's objection.

¶ 10  The Department and the child's guardian ad litem (GAL) assert that mother did not preserve her argument. We agree. True, as mother asserts, she objected to the Department's request that the court take judicial notice of the prior proceeding. But raising an objection on the basis of "propensity" is insufficient to preserve mother's contentions that the juvenile court violated her due process rights and erred by taking judicial notice of mere allegations, not undisputed facts. *See People v. Ujaama*, 2012 COA

4

36, ¶ 37 ("An issue is unpreserved for review when . . . an objection or request was made in the trial court, but on grounds different from those raised on appeal . . . ." (citations omitted)). Thus, we decline to address this issue. *See Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25 ("In civil cases, arguments never presented to, considered by, or ruled upon by a district court may not be raised for the first time on appeal.").

## IV.   Appropriate Treatment Plan

¶ 11    Mother contends that the juvenile court erred by finding that her treatment plan was appropriate. We disagree.

### A.    Applicable Law

¶ 12    Except in some limited circumstances not applicable here, a juvenile court must adopt an appropriate treatment plan for a parent following a dispositional hearing. § 19-3-508(1)(e)(I), C.R.S. 2025; *People in Interest of Z.P.S.*, 2016 COA 20, ¶ 15. The treatment plan seeks to preserve the parent-child legal relationship by assisting the parent in overcoming the problems that required intervention with the family. *People in Interest of L.M.*, 2018 COA 57M, ¶ 25. Therefore, an appropriate treatment plan is one that is approved by the court, relates to the child's needs, and provides

5

treatment objectives that are reasonably calculated to render the parent fit to provide adequate parenting to the child within a reasonable time. § 19-1-103(12), C.R.S. 2025; *People in Interest of K.B.*, 2016 COA 21, ¶ 13. A juvenile court has discretion in formulating a treatment plan that relates to the child's needs and is reasonably calculated to render the parent fit within a reasonable time. *People in Interest of M.W.*, 2022 COA 72, ¶ 32.

¶ 13   We measure the appropriateness of a treatment plan by its likelihood of success in reuniting the family, which we assess in light of the facts existing at the time the juvenile court approved the plan. *People in Interest of B.C.*, 122 P.3d 1067, 1071 (Colo. App. 2005). The court may modify a treatment plan when new information or changed circumstances render a previously approved treatment plan no longer appropriate. *Z.P.S.*, ¶¶ 26-27. The fact that a treatment plan is not ultimately successful does not mean that it was inappropriate when the court approved it. *People in Interest of M.M.*, 726 P.2d 1108, 1121 (Colo. 1986).

## B.   Preservation

¶ 14   The parties dispute preservation. The Department and GAL contend that mother did not adequately preserve this issue because

she never raised her belief that the treatment plan did not adequately address her protective capacity. Mother argues that she could not have preserved the issue because the juvenile court "did not inform the parties that the biggest concern was ongoing contact between [m]other and [father]" until it issued the order terminating mother's parental rights. *Compare People in Interest of M.S.*, 129 P.3d 1086, 1088 (Colo. App. 2005) (declining to review a challenge to the appropriateness of a treatment plan when the parent failed to object to any deficiencies in the treatment plan before the termination hearing), *with People in Interest of B.J.D.*, 626 P.2d 727, 730 (Colo. App. 1981) (concluding that a parent need not object to a treatment plan to challenge its appropriateness on appeal). But we need not determine whether mother was required to preserve her argument because even if we assume she preserved it, we discern no basis for reversal.

## C. Analysis

¶ 15    The juvenile court adopted a treatment plan for mother requiring her to (1) sign releases of information upon request of the Department; (2) attend family time to develop and maintain a bond with the child; (3) complete a substance abuse evaluation, engage in

7

substance abuse counseling, and provide drug tests as requested by the Department; (4) learn and maintain protective parenting skills; (5) meet the child's medical, physical, and emotional needs; (6) obtain adequate employment; and (7) maintain a safe and stable home for the child.

¶ 16 As part of the order terminating mother's parental rights, the juvenile court reaffirmed its prior finding that mother's treatment plan was appropriate. But the court found that the treatment plan was unsuccessful because mother exhibited the same problems it was designed to address. The court focused on mother's unwillingness to verify her sobriety with the Department, lack of employment throughout the case, inconsistent family time attendance, noncompliance with the parenting class objective, and lack of demonstrated ability to protect the child from father.

¶ 17 Mother asserts that, even though the juvenile court focused primarily on her lack of protective parenting capacity when terminating her parental rights, her treatment plan did not address this concern. Specifically, she contends that the treatment plan should have included services for "women empowerment" and required her to engage in therapy to increase her protective capacity

and learn how to set appropriate boundaries with father and paternal grandmother. We are unpersuaded.

¶ 18 Mother's treatment plan specifically required her to "learn and maintain parenting skills that do not put [the child] at risk for abuse or neglect." As part of this objective, mother was required to attend parenting classes, "learn and discuss appropriate supervision" of the child, and demonstrate her ability to "keep [the child] safe from physical abuse, sexual abuse, emotional abuse, and/or neglect." Mother fails to articulate why this objective, as written, was not reasonably calculated to render her fit. She implies, without any record support, that she needed additional assistance "to understand how to remove herself from [father]." But, two weeks before adopting the treatment plan, the juvenile court advised mother about its concerns regarding the child's contact with father and paternal grandmother. And yet mother requested no amendments or additions to the treatment plan. *See B.C.*, 122 P.3d at 1071. Nor did mother request any amendments or modifications to the treatment plan after its adoption.

¶ 19 Furthermore, considering mother's noncompliance with the general protective parenting objective and the caseworker's

testimony that she struggled to "get [mother] engaged in any services" other than family time, it is unclear how the inclusion of additional objectives or action steps would have changed the outcome of the case. *See* C.A.R. 35(c) (we may disregard any error not affecting a party's substantial rights); *People in Interest of R.J.*, 2019 COA 109, ¶ 22 (an error affects a substantial right if it can be said with fair assurance that it substantially influenced the case's outcome or impaired the basic fairness of the proceeding).

¶ 20 We discern no reversible error in the juvenile court's finding that mother's treatment plan was appropriate.

## V. Treatment Plan Compliance

¶ 21 Mother contends that the juvenile court erred by finding that she did not substantially comply with her treatment plan. We disagree.

## A. Applicable Law

¶ 22 The parent is responsible for assuring compliance with, and the success of, the treatment plan. *People in Interest of C.T.S.*, 140 P.3d 332, 335 (Colo. App. 2006). Absolute compliance with every provision of the treatment plan is not required. *Id.* at 333. However, partial compliance, or even substantial compliance, may

not be sufficient to render the parent fit. *People in Interest of T.E.M.*, 124 P.3d 905, 909 (Colo. App. 2005).

¶ 23     When, as here, a child is under six years old at the time a petition in dependency or neglect is filed, the expedited permanency planning (EPP) provisions apply. §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2025. In an EPP case, the juvenile court cannot find that a parent substantially complied with a treatment plan when the parent (1) has not attended family time, unless good cause can be shown for failing to attend; or (2) exhibits the same problems addressed in the treatment plan without adequate improvement. § 19-3-604(1)(c)(I).

### B.     Analysis

¶ 24     In determining that mother "only partially complied" with her treatment plan, the juvenile court found that mother "exhibit[ed] the same problems intended to be addressed by the treatment plan without adequate improvement as set forth in [section] 19-3-604(1)(c)(I)(B)." The court acknowledged that mother had "likely" obtained sobriety but found that any sobriety was "tenuous" based on mother's refusal to verify her sobriety to the Department. Furthermore, the court found that mother had not shown the

11

capability to maintain a stable home, maintained employment throughout the case, demonstrated the ability to provide financially for the child, completed a parenting class, consistently attended family time, provided good cause for her missed family time sessions, or shown the ability to protect the child from father.

¶ 25   The record supports these findings. The caseworker testified that mother had not consistently attended family time, built a bond with the child, demonstrated an ability to meet the child's needs, or secured employment. At the time of the termination hearing, the caseworker expressed concern about mother's ongoing interactions with father and her ability to maintain long-term sobriety. As a result, the caseworker opined that mother had not substantially complied with her treatment plan.

¶ 26   Nevertheless, mother asserts that because she was sober, had housing, received financial support through Temporary Assistance for Needy Families (TANF), cared for her younger child, and remedied any concern about her contact with father by moving thirty miles away from his city of residence, the juvenile court erred by finding that she had not complied with her treatment plan. But the court heard testimony regarding mother's substance abuse

treatment, sobriety, housing, TANF, and care of her younger child, and it still found that mother was unfit for several reasons. *See T.E.M.*, 124 P.3d at 909. We cannot reweigh the evidence or substitute our judgment for that of the juvenile court. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29.

¶ 27 Moreover, irrespective of all other treatment plan components, the juvenile court found, with record support, that mother did not attend all her scheduled family time and, for the most part, did not provide good cause for the missed visits. The caseworker testified that mother did not attend the majority of the family time visits during the case and had not seen the child in the two months preceding the termination hearing. Mother's explanations for her missed visits included that she needed her boss to "open the gate" before she could leave for family time, her dogs ran away, and she could not find a babysitter for her younger child. And several times mother missed visits without providing any advance notice or explanation.

¶ 28 In this EPP case, the record supports the juvenile court's finding that mother failed to substantially comply with her

treatment plan. *See* § 19-3-604(1)(c)(I)(A).[1] Consequently, we discern no error.

## VI. Reasonable Efforts

¶ 29 Mother contends that the juvenile court erred by determining that the Department made reasonable efforts to rehabilitate her and reunify her with the child. We disagree.

## A. Preservation

¶ 30 The Department and GAL dispute preservation because mother did not challenge the reasonableness of the Department's efforts before the termination hearing. *Compare People in Interest of D.P.,* 160 P.3d 351, 355-56 (Colo. App. 2007) (declining to review a reasonable efforts finding because the parent failed to object to services before the termination hearing), *with People in Interest of S.N-V.,* 300 P.3d 911, 914-18 (Colo. App. 2011) (holding that a parent's failure to object to services does not bar appellate review of

---

[1] We decline to consider mother's assertion, raised for the first time in her reply brief, that the record did not support a conclusion that she "had completely stopped visiting the child." *See In re Marriage of Drexler,* 2013 COA 43, ¶ 24 (declining to address arguments raised for the first time in the reply brief). In any event, the evidence on this point was at best disputed, and it was the juvenile court's province to resolve that dispute. *See People in Interest of A.M. v. T.M.,* 2021 CO 14, ¶ 15

a reasonable efforts finding). But we need not determine whether mother was required to preserve her argument because even if we assume she preserved it, we discern no basis for reversal.

### B. Applicable Law

¶ 31 Before a court may terminate parental rights under section 19-3-604(1)(c), the county department of human services must make reasonable efforts to rehabilitate parents and reunite families. §§ 19-1-103(114), 19-3-100.5(1), 19-3-208(1), 19-3-604(2)(h), C.R.S. 2025. "Reasonable efforts" means the "exercise of diligence and care" for children who are in out-of-home placement. § 19-1-103(114).

¶ 32 Appropriate services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard. § 19-1-103(114). The services that "must be available and provided" as determined by individual case planning include, among others, screenings, assessments, home-based family and crisis counseling, information and referral services to available public and private assistance resources, family time, and placement services. § 19-3-208(2)(b). Additional services may be required if funding is available,

including transportation and family support services.
§ 19-3-208(2)(d).

¶ 33    To evaluate whether a department made reasonable efforts,
the court should determine whether the services provided were
appropriate to support the parent's treatment plan, *S.N-V.*, 300 P.3d
at 915, by "considering the totality of the circumstances and
accounting for all services and resources provided to a parent to
ensure the completion of the entire treatment plan," *People in
Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.

### C.    Analysis

¶ 34    The juvenile court concluded that the Department made
reasonable efforts to rehabilitate mother.  Underlying this
conclusion, the court found that the Department arranged family
time; offered transportation assistance; made referrals for drug
testing, parenting classes, and therapy; and assisted mother with
her housing search.

¶ 35    The record supports these findings.  The caseworker testified
that she offered to arrange virtual family time while mother engaged
in inpatient treatment, but mother declined; submitted referrals for
parenting time supervision, including therapeutic supervision;

16

submitted referrals for parenting classes to two separate agencies, but mother was discharged for noncommunication; tried multiple times to schedule the parent-child interactional with mother; offered bus passes and gas vouchers to mother; and resubmitted referrals for drug testing each time mother was removed for nonparticipation.

¶ 36     Nevertheless, crediting her own testimony, mother contends that the Department failed to assist her with transportation, housing, or substance abuse treatment.  But the court considered the conflicting testimony from the caseworker and mother regarding these issues before finding the caseworker more credible.  And it was for the juvenile court to consider and weigh the evidence, resolve any evidentiary conflicts, and make credibility findings.  *See A.M.*, ¶ 15; *see also People in Interest of A.J.L.*, 243 P.3d 244, 250 (Colo. 2010) ("[I]t is important to defer to the [juvenile] court, particularly when it hears contradictory testimony on material issues . . . .").

¶ 37     Mother also asserts that the juvenile court erred by finding that the Department made reasonable efforts because the Department did not provide reunification or family therapy.  True,

the caseworker acknowledged that she did not make referrals for family therapy. But she testified that, based on the child's outbursts and lack of a bond with mother, it was not "appropriate" for the child to be in therapy with mother. The Department ensured that the child was engaged in play therapy and tried to discuss individual therapy, as well as the child's traumas and triggers, with mother "to try to get [their] relationship back on track." But mother did not believe there was an issue. Ultimately, the caseworker opined that mother was not "engaging in services" or "working on her end" to improve her relationship with the child. *See C.T.S.*, 140 P.3d at 335.

¶ 38    In light of the juvenile court's findings, which enjoy record support, we discern no error in its conclusion that the Department made reasonable efforts. *See My.K.M.*, ¶ 33.

## VII.   Less Drastic Alternatives

¶ 39    Mother contends that the juvenile court erred by finding that there was no less drastic alternative to termination and that termination was in the child's best interests. We disagree.

18

### A. Applicable Law and Standard of Review

¶ 40    The consideration and elimination of less drastic alternatives are implicit in the statutory criteria for termination. *A.M.*, ¶ 40. In considering less drastic alternatives, a juvenile court must give primary consideration to the child's physical, mental, and emotional conditions and needs. *People in Interest of Z.M.*, 2020 COA 3M, ¶ 29. A juvenile court may also consider, among other things, (1) whether an ongoing relationship with a parent would be beneficial to the child, *see People in Interest of A.R.*, 2012 COA 195M, ¶ 38; (2) whether the child is bonded with the parent, *see People in Interest of N.D.V.*, 224 P.3d 410, 421 (Colo. App. 2009); and (3) whether an allocation of parental responsibilities (APR) provides adequate permanence and stability for the child, *see T.E.M.*, 124 P.3d at 910-11.

¶ 41    For a less drastic alternative to be viable, it must do more than adequately meet the child's needs; it must be in the child's best interests. *A.M.*, ¶ 27. If a juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the alternative and order termination. *Id.* at ¶ 32.

¶ 42 "We review a juvenile court's less drastic alternatives findings for clear error." *People in Interest of E.W.*, 2022 COA 12, ¶ 34. Thus, when a juvenile court considers less drastic alternatives but instead finds that termination is in the child's best interests, we are bound to affirm the decision so long as the record supports its findings. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B. Analysis

¶ 43 The juvenile court found that there was no less drastic alternative to termination that would serve the child's physical, mental, and emotional needs. In particular, the court found that the child needed the permanency that only adoption could provide. In so finding, the court considered the foster parents' preference for adoption, the length of the child's out-of-home placement, the child's reactions to family time, and the length of the EPP case.

¶ 44 The record supports the juvenile court's findings. The caseworker testified that the child exhibited concerning behaviors — including nightmares, hitting, kicking, spitting, and biting — following family time sessions. The caseworker also described the lack of a bond between mother and the child. The caseworker opined that the child needed a stable and permanent

home that could only be assured through termination and adoption and, thus, that termination best served the child's physical, mental, and emotional needs and conditions. *See A.M.*, ¶ 32; *see also People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011) ("Permanent placement is not a viable less drastic alternative to termination if the children need a stable, permanent home that can only be assured by adoption.").

¶ 45 Even so, relying on *People in Interest of H.L.B.*, 2025 COA 86, mother contends that the juvenile court erred by finding that termination was in the child's best interests because the court recognized the value of preserving the child's relationship with mother. To be sure, in its oral ruling, the juvenile court said that mother and the child had a relationship and acknowledged the "value specifically to the child . . . in preserving" that relationship. But the juvenile court did not formally adopt those findings in its written order. *See People in Interest of O.J.S.*, 844 P.2d 1230, 1233 (Colo. App. 1992) ("[T]he court has the authority to supplement and modify the opinions it expressed in its oral remarks until the date

judgment formally enters.").[2]  And any benefit to the child of maintaining a relationship with a parent is just one factor, among many, for the court to consider when analyzing whether any less drastic alternatives are in the child's best interests.  *See A.R.,* ¶ 38. The court ultimately found that, considering all relevant factors, termination and adoption was in the child's best interests, notwithstanding the relationship between mother and the child.

¶ 46     Moreover, mother's reliance on *H.L.B.* is misplaced.  In *H.L.B.,* a division of this court upheld a juvenile court's judgment denying a department's motion to terminate a parent's parental rights because the record supported the juvenile court's finding that an APR was in the child's best interests, even though a specific individual willing to accept an APR had not been identified.  *H.L.B.,* ¶¶ 21, 25.  In contrast, here, irrespective of the availability of an individual willing to accept an APR, the juvenile court found that termination and adoption was in the child's best interests.  *See A.M.,* ¶ 32; *see also*

---

[2] Mother argues that the juvenile court's less drastic alternative finding is inconsistent with its order that mother continue to have parenting time following termination and during the pendency of this appeal, but the court rescinded its post-termination visitation order in its final written order.

*H.L.B.*, ¶ 23 ("[W]hether a less drastic alternative is available is a distinct consideration from a court's later finding of whether that alternative is in the child's best interests.").  And because the record supports the juvenile court's finding, we must accept its determination.  *See B.H.*, ¶ 80.

## VIII.  Disposition

¶ 47      The judgment is affirmed.

JUDGE HARRIS and JUDGE TOW concur.